261 P.2d 927

**HOYT et al. v. WASATCH HOMES, Inc.**

No. 7919.

Supreme Court of Utah.

Oct. 2, 1953.

Dwight L. King, Salt Lake City, for appellant.

Romney & Nelson, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs Hoyt sued defendant Wasatch Homes, real estate brokers, for $1,000 which defendant had kept as a commission for arranging a sale of property owned by plaintiffs; defendant answered that it had earned the money and counter-claimed for an additional $300, alleging that the total commission due it for services rendered was $1,300. Judgment below was for plaintiffs. Defendant appeals.

Defendant does not contend that the sale was actually consummated, but asserts that because it found a ready, willing and able buyer the commission was fully

earned and that the trial court erred in refusing to so find and grant judgment on its counterclaim.

About April 25, 1951, the Hoyts entered into an agreement giving Defendant Wasatch Homes, Inc. authority to sell certain lots owned by Hoyts in a proposed subdivision to be known as "Indian Rocks" and by which Hoyts were to pay a commission if, as the trial court found, a sale was *consummated.*

Thereafter, defendant [Wasatch] procured as prospective buyers, a Mr. and Mrs. Elmer Johnson, who made a down payment of $1,000 to defendant and signed the usual printed form Earnest Money Receipt and Agreement, which recited, inter alia, the purchase price as $26,000: $1,000 paid in cash, $6,000 to be paid within 60 days, after acceptance, not giving detail as to payment of the $19,000 balance, but reciting that the "terms and conditions * * * subject to adjustment agreeable to both parties." It also required plaintiffs [Hoyts] to "provide engineers' plats and obtain annex [sic] * * * [of the subdivision] to city * * *" and further provided that "the seller agrees, in consideration of the efforts of the * * * [broker Wasatch] in procuring a purchaser, to pay the said * * * [broker] the rate of commission recommended by the Salt Lake Real Estate Board." This rate is 5% and upon $26,000 amounts to the $1,300 claimed by defendant. The plaintiffs Hoyt accepted the offer contained in the agree-

ment and signed it; it was likewise approved and signed for defendant by its agent, Anderson.

Mr. Anderson continued to work on the transaction. He met with the engineer several times and made three or four trips from Salt Lake City to Ogden in helping to make arrangements for the annexation of the subdivision to Salt Lake City. Subsequently, Mr. Hoyt informed him that a Mr. Mark Eggertson of an abstract and title insurance firm was helping the parties work out details and that Mr. Anderson's help would not be needed further. Consequently the latter did nothing more about completing the deal.

After further negotiations, the parties did come to agreement as to the terms and time of payment of the $19,000 balance and the security to be furnished by the purchasers (Johnsons). These particulars were set down in a memorandum made by Mr. Eggertson during a conference of the parties in his office. It was not signed, however, and no formal contract was prepared.

For this reason plaintiffs seek refuge in the fact that no sale was consummated and maintain that defendant was therefore not entitled to its commission. Superficially this may appear to be a simple and easy solution to the dispute. But defendant charges that after engaging its services and permitting it to develop the deal, which both parties accepted and signed the earnest money receipt on, Hoyt suf-

fered a change of mind and wilfully refused to cooperate; in fact "bought off" the Johnsons who were ready, willing and able purchasers, by paying them $1,000. Defendant avers that to permit Hoyt to recover the $1,000 from it under those circumstances and cheat them out of their commission would be wholly unconscionable.

■ Consideration of this charge necessitates a further survey of Hoyts' activities and the factual situation. In regard to it we are obliged to take the evidence and all fair inferences therefrom in the light most favorable to plaintiffs because they prevailed in the lower court.

The plaintiff Richard R. Hoyt himself admitted that the terms contained in the Eggertson memorandum were acceptable to him. When questioned at the trial concerning what additional details he claimed were not worked out, he referred to only two matters. These were: (1) That he was to inspect some property in Montana which the Johnsons had offered as collateral and (2) That the Johnsons were to post a bond guaranteeing the City that certain improvements would be taken care of. The significance of these will be later referred to, and as will be seen, there was no disagreement concerning either of them, it was just a matter of getting them done.

Activities looking toward the creation of the subdivision and annexation to the City, the particulars of which are immaterial, took place during the summer and fall of 1951. It is important to note that there is no evidence that either party pressed for any hurry in completing the transaction during that time, and particularly that Hoyt made no complaint of delay on Johnson's part. Meanwhile, the Hoyts had arranged to sell another block of lots in the subdivision to a Mr. John Glauser. According to the evidence, thereafter the attitudes of both Hoyt and Glauser were against the Johnsons remaining in the set-up. The testimony of Mrs. Johnson indicates that they wanted the Johnsons out; Hoyt expressly told her that he was sorry he had sold to them. This statement but reflects what an analysis of his actions hereinafter recited renders unmistakably clear: That he did not want to go through with the sale of the property to Johnsons as he had agreed.

The Earnest Money Agreement was obviously preliminary, and although it did provide that an additional $6,000 was to be paid within 60 days, the only reasonable deduction to be made from the facts shown is that this money was not to be paid until the formal written contract was entered into. Notwithstanding this, soon after Hoyt succeeded in getting the subdivision annexed to the City, but before any final contract had been submitted to the Johnsons, Hoyt served a notice on them reciting that because they had failed to pay the $6,000 within sixty days and to agree to terms and conditions of the proposed sale, that "unless you pay * * * the full

sum of $25,000 * * * and assume full responsibility, and arrange for the installation of sidewalks, street paving, curb and gutter and sewer * * * and furnish the necessary bond * * * for such improvements within five days, * * *" the sellers would consider the agreement cancelled and terminated.

Upon receipt of the above notice, the Johnsons tendered the $6,000 which Hoyt refused to accept, informing them that there was no contract and that the deal was not going through. It is to be remembered that the notice just referred to was the first demand made by Hoyt indicating any dissatisfaction with the way the deal was proceeding, and further that there existed no point of difficulty of any importance between Hoyt and the purchasers (Johnsons). The only further grounds specified by Hoyt in justification for his refusal to go through with the deal are the two matters mentioned above concerning the inspection of property offered as security and the posting of an improvement bond. The fact with reference to the Johnsons' Montana property, which they offered as security, is that other evidence shows it was worth about $40,000 and further, that the Johnsons were also offering a duplex in Salt Lake. There is no indication in the record that Hoyt ever voiced any dissatisfaction with the security arrangements except his own failure to inspect the Montana property. Plainly this dereliction on his own part is of no avail to him in refusing to go forward with the contract.

The parties were in accord about Johnsons' duty to furnish the bond; they knew they were to furnish it, and in fact the subdivision would not have been valuable to Johnsons until the bond had been furnished and annexation to the City accomplished. It is true that some evidence indicates that they made one attempt to get a bond from a bonding company without success. But the Johnsons both testified that they had made arrangements for another bond; this was not disputed; nor did Hoyt show that any demand concerning it had been made or remained uncomplied with except the five-day notice above quoted, which was coupled with unreasonable and arbitrary demands, including that $25,000 cash must be paid within five days, and this before any contract had been presented to them.

It is likewise not disputed that upon receipt of such notice from Hoyt, in addition to offering to pay the $6,000, Johnsons indicated their willingness and desire to meet the requirements of their contract. They testified that at that time they were willing and able to comply with its terms, and the evidence does not demonstrate otherwise. In spite of these facts, their offer met with a blanket rejection upon Hoyt's part, with no suggestion of counter-offer or other reasonable effort to complete the transaction. It was at this state of the proceedings that discussions were had which re-

sulted in a mutual rescission agreement by which Johnsons released any claims they had in the property to Hoyt, for which he paid them the $1,000. Hoyt then brought this suit against the defendants to recoup such payment and the lower court allowed him to recover because the sale had not been consummated. It is the correctness of this ruling with which we are concerned.

Just prior to the rescission agreement, there were just two possible alternatives with respect to the rights of the parties under the Earnest Money Receipt and Agreement: Either (a) Hoyt had a right to rescind against Johnsons for their failure or inability to comply with its terms, or (b) Hoyt had no such right because Johnsons had complied and were willing and able to complete the transaction.

Under alternative (a), if it had been Johnsons who had failed and refused to complete the transaction, Hoyt was authorized by the Agreement to retain and forfeit the $1,000 as "liquidated and agreed damages." In such event, Wasatch may also have had some rights against Johnsons for any wilful failure to complete the contract as required by the Earnest Money Agreement and may have had a right to retain the $1,000. This latter matter is not of moment here because, as has been hereinabove demonstrated, the evidence quite conclusively indicates that the other alternative was the true factual situation and was so regarded by the parties.

From the facts hereinabove delineated, it is plain to be seen that the grounds as-

signed by Hoyt as basis for refusal were but specious rather than real reasons. That he was aware that Johnsons had preserved their rights under the contract, were willing and able to complete the transaction, and that he was therefore not in a position to forfeit them out, is clearly manifest by the fact that he paid them $1,000 for the contract of rescission. If he had had any valid basis for refusing to go through with the deal, it is highly unlikely that he would have made this substantial payment for a relinquishment of their rights. It is hardly to be supposed that he did so out of mere generosity; and even if he did so it should have been of his own money and not an attempt to deprive defendant of it.

We are therefore impelled to the conclusion that the only reasonable interpretation of the facts and circumstances shown is alternative (b): That the Johnsons had not failed in their obligations so as to subject them to forfeiture, and were ready, willing and able buyers. Under such circumstances Hoyt could not, by refusal to cooperate, defeat the defendant's right to its commission. And we say this advisedly, notwithstanding the finding of the trial court, that when Hoyt originally engaged the defendant to sell the property, it was agreed that the commission would be paid only if a sale were consummated.

That agreement certainly contemplated that the plaintiff would cooperate in good faith toward the accomplishment of the purpose for which he employed de-

fendant. He cannot be permitted to procure them to obtain a buyer, on terms accepted by the plaintiff, and then prevent the accomplishment of what he requested and authorized them to do by arbitrarily refusing to perform his part of the transaction. Under such circumstances, he will not be heard to complain of their failure to do that which he prevented.[1]

 There is justification for defendant's complaint of the unfairness of permitting the seller to accept the buyer produced by them, dismiss them out of the deal, and then without any notice to or consent of the broker, on his own initiative, negotiate a cancellation of the contract and try to deprive the broker of the commission on the sale which he had arranged. Under such circumstances, where there is a voluntary rescission, the broker is still entitled to his compensation.[2]

Defendant advances another proposition supporting the claim to its commission: That the Earnest Money Receipt and Agreement, having been executed *after* the listing agreement, and after the Johnsons had been accepted as buyers, superseded the former agreement; and that it expressly binds plaintiffs to pay defendant their commission. It states:

"The seller agrees, in consideration of the efforts of the * * * [broker]

in procuring a purchaser, to pay the said * * * [broker] the rate of commission recommended by the Salt Lake Real Estate Board."

Defendant points out that under such an agreement all the broker is obligated to do is to produce a ready, willing and able buyer[3] and that at plaintiff's request it exerted "efforts * * * in producing a purchaser * * *" before, at the time of, and after the plaintiffs signed the Earnest Money Agreement and contend that it follows as an elementary proposition that the plaintiff, having so agreed, must pay. Plaintiffs, however, counter that the prior listing contract calling for a consummated sale, stands independent of the Earnest Money Receipt and Agreement and is not necessarily inconsistent with it. In view of the language just quoted specifically covering the payment of commission for efforts of the broker in procuring a purchaser (not in consummating a sale) the writer is of the opinion that the defendant is correct in this contention also, and that for this additional reason judgment in favor of the defendant for its commission is mandatory. But due to the fact that it seems clear that judgment should be in favor of the defendant even if the rights of the parties are based upon the original agreement for a consummated

1. Lesser v. W. B. McGerry & Co., 121 Cal. App. 193, 8 P.2d 1058; Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 169 A. L.R. 600; Sill v. Ceschi, 167 Cal. 698, 140 P. 949; see 169 A.L.R. 605.

2. See Ogden Savings & Trust Co. v. Blakely, 66 Utah 229, 241 P. 221; see 12 C. J.S., Brokers, § 89, page 204.
3. See Hornback v. Sabin Robbins Paper Co., 27 Ohio App. 329, 161 N.E. 213.

sale, it is unnecessary to determine whether the two agreements could stand independent of one another. It is therefore deemed inexpedient to protract this opinion by detailed treatment of the latter problem.

Reversed and remanded with directions to vacate judgment in favor of plaintiffs and enter judgment in favor of defendant on its counterclaim in accordance with this opinion. Costs to appellant.

HENRIOD and WADE, JJ., concur.

WOLFE, Chief Justice (dissenting).

I dissent. The majority opinion, while recognizing the rule that we must view the evidence and all the inferences arising therefrom in the light most favorable to the party who prevailed in the trial court, has, I think, failed to follow that rule. The trial court found that there was no meeting of the minds of the parties concerning the sale. There is competent evidence in the record to sustain that finding. It follows as a matter of law that the defendant is not entitled to a commission, regardless whether the plaintiffs agreed to pay a commission only if a sale were consummated, as the trial court found, or if the defendant merely found a ready, willing and able buyer, as contended for by Mr. Justice CROCKETT.

The Earnest Money Receipt and Agreement signed by the parties recited the receipt of $1,000 which was paid by the buyers and provided that an additional $6,000 would be paid by them within 60 days. No provision was made therein for the time and manner of payment of the $19,000 balance, but the following words were typewritten on the printed form:

"earnest money receipt made in lieu of formal contract of purchase incorporating necessary provisions for the understanding and protection of both buyer and seller, and terms and conditions contained herein subject to adjustment agreeable to both parties."

Thus as to the time and manner of payment of the $19,000 balance, the parties simply agreed to agree in the future. It requires no argument to demonstrate that such a provision renders the agreement illusory. It is contended in the majority opinion that the parties did thereafter orally agree as to the terms and time of payment of the $19,000 balance and that an unsigned memo containing those terms was made by Mark Eggertson during a conference of the parties in his office. However, Mr. Hoyt, one of the plaintiffs, testified that the terms contained in the memo were not acceptable to him unless other problems which confronted the parties could be solved; that he told Mr. Eggertson that the parties had other matters to discuss before they could agree on a contract; and that he instructed Eggertson to wait until the parties solved their difficulties before going ahead and drafting a contract embodying the terms contained in the memo. Mr. Eggertson likewise testified that the con-

ference in his office was terminated when both parties seemed to agree that there were too many indefinite matters that first had to be worked out before the parties could enter into a contract. Later someone called Mr. Eggertson on the telephone and told him "not to worry about the contract for the time being."

The matters which had to be resolved between the parties before the plaintiffs would agree to sell to the Johnsons according to the terms contained in the memo were never resolved. One of these problems was that the Johnsons had to obtain a bond assuring Salt Lake City that certain improvements would be made to the lots if the City annexed the subdivision. Under the terms of the Earnest Money Receipt and Agreement it was the duty of the plaintiffs to obtain annexation, but they could not do so until the Johnsons obtained a bond. Two bonding companies to which the Johnsons applied declined to bond them. Mrs. Johnson did testify, however, that early in January, 1952, just shortly before the plaintiffs served the demand upon them that they pay the entire balance of the purchase price within five days, they (the Johnsons) found a person who would put up a cash bond for them but on cross examination she would not testify that they had ever informed the plaintiffs of that fact. That the Johnsons never informed the plaintiffs that they could obtain a bond is further borne out by the testimony of Mr. Hoyt that Mr.

Johnson told him that he could not qualify for a bond and would "cancel out," providing the plaintiffs would return his $1,000 earnest money, plus $900 he had paid toward the purchase of one of the lots.

Another matter which had to be solved before the plaintiffs could agree to sell the lots to the Johnsons on the terms contained in the memo was that of inspecting certain Montana property owned by the Johnsons which they were going to pledge to secure the unpaid balance of the purchase price of the lots. Mr. Johnson was to take Mr. Hoyt to Montana to make this inspection. The trip was never made; there is no evidence that either party was responsible for this failure. I cannot agree with the conclusion of the majority opinion that it was due to Mr. Hoyt's own recalcitrance that the trip was never made. There is no evidence to that effect. In reaching that conclusion, the majority opinion is drawing an inference which is unwarranted and which is unfavorable to the party who prevailed in the trial court. It is just as reasonable to infer, although such an inference would, too, be unwarranted, that the failure was due to Mr. Johnson's dereliction.

Thus there is evidence that the two matters which had to be solved by the parties before the plaintiffs would agree to sell the lots to the Johnsons on the terms embodied in the memo written by Mr. Eggertson were never solved: (1) the Johnsons, if they ever were able to obtain a bond, did not

18

so inform the plaintiffs, and (2) for some unexplained reason the Montana inspection trip was never made.

As heretofore stated, Mr. Hoyt testified that Mr. Johnson told him that he could not obtain a bond, that he was willing to "cancel out" providing the plaintiffs would return his $1,000 earnest money and also pay him $900 which he had paid toward buying a lot in the subdivision. Because the plaintiffs had the right under the Earnest Money Receipt and Agreement to keep the $1,000 earnest money if the Johnsons failed to cŏmplete their purchase of the lots, the majority opinion infers that when the plaintiffs chose instead to return it to the Johnsons, the plaintiffs must have realized that they were obligated to sell to the Johnsons, else they would not have made this substantial payment for the Johnsons' interest in the lots. The difficulty with this inference drawn by the majority opinion is that it penalizes the plaintiffs because they were willing to return to the buyers their earnest money which the plaintiffs as sellers had in no way earned, and which would be a windfall to them if they were allowed to keep it. Furthermore, under the rule of Perkins v. Spencer, Utah, 243 P.2d 446, it is doubtful that they could legally keep it. Again, the majority opinion has drawn an inference from the evidence which is unfavorable to the party who prevailed in the lower court.

I, therefore, cannot agree with the majority opinion that it was due to the wilful refusal of the plaintiffs to cooperate with the buyers that the sale was never made. As I have pointed out, there is ample evidence that the matters which had to be solved between the parties before the plaintiffs would agree to sell the lots to the Johnsons on the terms contained in the memo written by Eggertson, were· never solved; that the plaintiffs are not chargeable for the failure of the parties to solve these preliminary matters, but that the failure was due primarily to the Johnsons' inability to obtain a bond or if they did become able to obtain a bond, as they contend, to inform the plaintiffs of that fact. These preliminary matters never having ·been solved, the plaintiffs were never agreeable to selling the lots to the Johnsons on the terms contained in the memo. The Johnsons were not ready, willing and able ·buyers because they were never ready, willing and able to purchase the lots on ·terms acceptable to the sellers (plaintiffs). Furthermore, not only were the Johnsons not able to meet the terms of the sellers. but Mrs. Johnson herself testified that she and her husband were not willing to complete the purchase because of the "hostility" of Mr. Hoyt and Mr. Glauser. It therefore follows that even if the defendant was entitled to a commission if he procured a ready, willing and able buyer, as Mr. Justice CROCKETT contends, such a buyer was not procured by the defendant.

It may be true, as contended for in the majority opinion, that a real estate broker is entitled to a commission when the seller and buyer rescind their contract. That rule,

however, has no application here as there was no enforceable contract between the parties which they could have rescinded. The so-called rescission agreement referred to in the majority opinion which was executed by the parties when it became apparent that no sale could be consummated, did not purport to rescind any agreement between the parties except the illusory Earnest Money Receipt and Agreement. The so-called rescission agreement merely purported to release each party from all claims which the other party might have against him, and the Johnsons quitclaimed to plaintiffs any right, title or interest in the property which they might have.

There is no doubt that the defendant's salesman, Anderson, did perform certain work for and confer certain resulting benefits on the plaintiffs. But it has long been established in this jurisdiction that neither a broker nor an agent may recover upon the basis of quantum meruit, but only upon a contract. Case v. Ralph, 56 Utah 243, 188 P. 640; Watson v. Odell, 58 Utah 276, 198 P. 772, 20 A.L.R. 280; Young v. Buchanan, Utah, 259 P.2d 876. The defendant has not earned its commission under its agreement with the plaintiffs. It is not entitled to compensation for unsuccessful efforts. 8 Am.Jur. 1084, 1085.

McDONOUGH, J., concurs in the views expressed by WOLFE, C. J., in his dissenting opinion.