278 P.2d 291

Hollis E. WALKER, Respondent,

v.

Levi G. PETERSON, Appellant.

No. 8213.

Supreme Court of Utah.

Dec. 16, 1954.

Walter G. Mann, Brigham, for appellant.

Rich & Strong, William S. Frank, Lawrence L. Summerhays, Salt Lake City, for respondent.

CROCKETT, Justice.

Levi Peterson was traveling north on highway 30-S, and made a left turn at an intersection near Bear River City when his automobile was struck by plaintiff's southbound car. Plaintiff, Hollis Walker, brought this suit to recover for damages to his automoble and Mr. Peterson counter-claimed. The court below entered judgment for plaintiff and dismissed the counter-claim. Defendant appeals.

There is practically no dispute about the facts. The accident occurred on April 14, 1952, at about 11:30 a.m.; roads were dry and visibility good. Both the highway and the intersecting street are 99 feet wide and the highway has hard surface 22 feet in width. As plaintiff approached from the north he would have been subject to a 60 mile per hour speed limit to a point a few hundred feet north of this intersection where there is a sign posting the speed limit at 40 miles per hour.

Shortly before the collision defendant, Peterson, had been traveling north. He parked on the east shoulder about 30 feet south of the intersection to talk to a friend. After the visit, he proceeded northward into the intersection, turned left, and went westerly through it where his car was struck in its right front quadrant near the west edge of the hard surface by plaintiff's southbound car. Upon starting his automobile, defendant had seen plaintiff's car coming from the north at a distance which he later estimated to be in excess of 375 feet from the intersection, but did not look again until he heard plaintiff's horn sound and brakes screech, too late to do anything to avert the collision. The defendant's vehicle in entering the intersection and making the turn was clearly visible to plaintiff as he approached from the north.

The trial court found that both parties were negligent: defendant for failing to keep a proper lookout, and because in making a left turn he failed to yield the right of way to defendant; the plaintiff in traveling at an excessive speed, that is, more than 60 miles per hour as he approached town, and more than the 40 mile posted speed limit at the location where the collision occurred. The court concluded that plaintiff's speeding was not a causative factor, and held that the defendant's negligence was the sole proximate cause of the collision, resulting in the judgment entered for the plaintiff.

It is the defendant's contention that the judgment was plainly based upon a misconception of law indicated by a statement of the trial judge during discussion at the close of the trial, that "* * * he who makes the left turn on * * * through highways must take the responsibility regardless of speed or any other circumstances, * * * *"—"* * * the proximate cause must rest solely on him who makes the left turn." This idea may possibly derive from Cederloff v. Whited,[1] a case heavily relied upon by plaintiff in the trial court, wherein Justice Wolfe said:

> "The driver making the left hand turn in most every case has control of the situation. He knows when he is going to turn. The opposing approaching drivers must discover it. Even where an approaching driver is coming too rapidly, the left hand turn drivers must take that into consideration. All the more reason that he should not take a chance."

It should be noted that this statement was not the opinion of the court, but was a part of a concurring opinion of one justice, and further that Justice Wolfe did not purport to state any invariable rule, but said "in most every case."

1.   110 Utah 45, 169 P.2d 777, 781.

It may be true that the driver making a left turn in many cases has the control of the situation, but this Court has never laid down a rule that in all cases, "the proximate cause must rest solely upon him who makes the left turn." Such is not, and of necessity could not be the law.

■ The driver going straight through the intersection does have the right of way. This means that where the circumstances are such that if the two continued their course there would be danger of collision, the left turner must give way.[2] It is recognized that right of way, based on direction of travel, is the best and most easily applied rule as to driver preference at intersections.[3] But in the very nature of things, it cannot be absolute. If it were, in any situation where there was considerable traffic, it would be a practical impossibility to safely make a left turn, no matter how long one waited, nor with what care he proceeded; the driver proceeding directly through would have complete license to commit any kind of negligence and claim the right of way under all circumstances, regardless of speed, lookout, distance away when he observed the left turner, and notwithstanding his own lack of care, always lay the responsibility upon the person making the left turn. It is so plain as to hardly warrant expression that one cannot, consistent with reason and justice, determine beforehand that in every case involving such an intersection collision, the driver making the left turn is solely responsible for the mishap.[4] As in all cases of collision, both drivers are required to exercise that degree of care which a reasonably prudent person under the circumstances would exercise for his own and others' safety, and where the failure of a party to meet this standard is a contributing cause of the accident, no relief can be had on his behalf. Under the circumstances here, where the defendant was in the intersection substantially ahead of plaintiff in time, and was making the left turn when the plaintiff was far enough away that ordinary reasonable care would require that he not insist upon claiming the right of way, plaintiff cannot race on into the intersection and rely on it to exculpate himself from wrong.

The plaintiff does not contend that the left turner must always be held responsible for a collision, nor that such was the law the trial court applied in determining the issues in this case. Instead, he argues that since it was the prerogative of the trial judge to find the facts, and since proximate cause is ordinarily a question of fact, we cannot upset the court's finding as to proximate cause unless we determine as a matter

2. Ibid.

3. 2 Blashfield Cyclopedia of Automobile Law & Practice, (Perm. Ed.) pp. 206 et seq.; Discussion in Martin v. Stevens, Utah, 243 P.2d 747.

4. See e. g., Hardman v. Thurman, Utah, 239 P.2d 215.

58

of law that the plaintiff's negligence proximately contributed to the collision.

■ It is true generally that statements made by a trial judge do not necessarily affect the validity of a judgment if it is otherwise sustainable.[5] But this is not true if the statements make manifest that a material issue was analyzed by the court under an erroneous conception as to the law applicable thereto (as seems to have been done here) and under such circumstances that a correct application of the law might well have produced a different result. For the fact trier to be under such a misapprehension of the law would be comparable to having the jury find a verdict under erroneous instructions as to the law.[6]

■ Defendant, however, seeks more than a new trial. He contends that it is so palpably clear that the plaintiff's excessive speed was a concurring proximate cause of the collision that the trial court was obliged to find contributory negligence as a matter of law and dismiss the action. This contention appears to be correct. Plaintiff's car left 148 feet of skid marks up to the point of impact. Under normal conditions the stopping distance on surfaced highway after brakes have been applied is 128 feet at 50 m.p.h. and 155 feet at 55 m.p.h.[7] So if plaintiff had stopped in the 148 feet, it would appear that he was traveling 50 to 55 m.p.h. when he applied his brakes. But he did not stop in that distance. There was a great deal of momentum remaining in his car. Defendant's car was knocked 72 feet, and plaintiff traveled 42 feet from the point of impact, indicating a speed considerably in excess of the 55 m.p.h.

Viewing the situation in a light even more favorable to plaintiff than the physical evidence would fairly admit of, i.e., 50 to 55 m.p.h.: in the ordinary reaction time of $\frac{3}{4}$ second (the time between recognition of danger and application of brakes) plaintiff would have traveled 55 to 61 feet before the brakes were applied. This, coupled with the 148 feet traveled thereafter, would place plaintiff at the very least 203 feet away when danger was recognized. If he had been traveling at the lawful speed of 40 m.p.h., he would have stopped in 126 feet, or 77 feet short of the point of impact; whereas the speed at which he was traveling rendered it impossible for him to stop. Under such state of facts, we do not see how reasonable minds could conclude other than that plaintiff's excessive speed was a contributing cause of the accident, which under our law would bar his recovery.

5. McCollum v. Clothier, Utah, 241 P.2d 468.

6. State v. Whitely, 100 Utah 14, 110 P.2d 337.

7. Data published by the Utah Highway Patrol.

The judgment in plaintiff's favor is vacated and the action is ordered to be dismissed. Costs to appellant.

McDONOUGH, C. J., and HENRIOD, WADE and WORTHEN, JJ., concur.