335 P.2d 404

J. Royal ANDREASEN and Alta N. Andreasen, Plaintiffs and Respondents,

v.

George H. HANSEN and Florence Hansen, Defendants and Appellants.

No. 8769.

Supreme Court of Utah.

Feb. 10, 1959.

Norman Wade, Dean W. Sheffield, Salt Lake City, for appellants.

E. L. Schoenhals, J. Royal Andreasen, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

Plaintiffs Andreasen recovered judgment against defendants Hansen based upon the failure of the defendants to go through with the purchase of a duplex after making a written offer and depositing $50 thereon. Defendants appeal.

Plaintiffs had listed the duplex for sale with the Holt Realty Co. On January 29, 1956, a Sunday, an agent of that company persuaded the Hansens to submit an offer of $15,000 and to make a deposit of $50. The agent filled out a form entitled "Earnest Money Receipt and Offer to

Purchase" and requested the defendants to sign, which they did. They claim that the agent represented to them, and that it was their understanding, that this was simply an offer and a receipt for their $50, and that if they did not want the property the $50 would be forfeited and that would be the extent of their obligation. The next day, Monday, the agent notified defendants that the plaintiffs had accepted the proposal. Defendants then gave further consideration to the transaction and on the next day, Tuesday, informed the agent that they could not handle it. Upon conferring with the plaintiff Royal Andreasen, who is an attorney, (hereinafter referred to as the plaintiff) he advised defendants that getting out of the deal was not that easy. Their attention was called to the fine print, so often the undoing of those who deal trustingly with certain types of business people who furnish them forms of fine print to sign. Notwithstanding the fact that it was only the next day after their offer was accepted; and further that they protested that they did not understand the nature of the "Receipt" given them, and offered to forfeit the money already paid, the plaintiff nevertheless insisted he would hold defendants for all damages connected with the proposed transaction, which he proceeded to do, and with vengeance, as will shortly be seen.

The language upon which plaintiffs seek to impale the defendants is:

"In the event the purchaser fails to pay the balance of the said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, *at the option of the seller,* be retained as liquidated and agreed damages." (Emphasis added.)

It is significant to state that the printed form of this so-called "Earnest Money Receipt and Offer to Purchase" presents a baffling aspect even to the eye of one trained, and compelled by duty, to ferret into the minutia of such documents, and it would be formidable indeed to the average layman. To be more specific: the letters run about 24 to the inch lineally; are less than $\frac{1}{20}$ inch high; the lines are so spaced that there are $13\frac{1}{2}$ lines to the vertical inch; and the eye must follow across a page 8 inches wide, then drop down and pick up the next line of this small type.[1] This is quite impracticable without the use of a straight edge to guide the eyes across these small lines. It is further to be observed that the clause upon which the plaintiffs rest their case was neatly buried in the center of this

---

1. The type classifies as five point Roman face; actually measured by writer, it is $\frac{1}{24}$ inch high; and averages about 24 letters to the linear inch; $13\frac{1}{2}$ lines to inch vertical.

page of fine print. The form is obviously not calculated to encourage a customer to read or to understand it; the purpose is plainly to the contrary. While the concept of what the ordinary reasonable person would do under the circumstances is not usually applied to this phase of contract law, it can be said with assurance that such a person would not ordinarily read nor apprehend the effect of the provision in question. It is not strange that it was not noticed nor understood by unsuspecting laymen, who were reposing some confidence in the representations made by a real estate salesman. Defendants' version that they understood that the amount paid would be forfeited and that be their only obligation is entirely credible.

Plaintiffs' evidence is that shortly after this transaction, on February 8, they listed the property with another realty company; and that it was sold on March 6 to one Hazel Pace for $14,000, $1,000 less than the Hansens' offer. The damages sought by the plaintiffs are quite in character with the overreaching of this transaction: They are as follows:

| | |
|---|---|
| Reduction in price | $1,000 |
| Refrigerator included in second sale | 150 |
| Loss of interest | 1,385 |
| Real Estate commission on second sale | 700 |
| Plaintiff's time involved on second sale | 250 |
| Attorneys' fees | 250 |

Assuming that the plaintiffs were entitled to damages, we refer to each of the items to show certain fallacies in their claims: as to the reduction of $1,000 in the purchase price: the proper measure of damages would be the difference between the defendants' offer and the actual market value of the property, but the market value should be properly established, which was not done. It is recognized that the sale price may be considered as some indication of that value, but it is not conclusive. There may have been elements involved in the sale other than the true market value. Indeed the haste in the second sale, precipitated by the fact that the plaintiffs were anxious to move into their new home, viewed together with other aspects of this case, render the bona fides of such reduction suspect. In regard to the inclusion of the refrigerator, there is likewise no certainty that it was necessary to "throw it in" the second sale; and the same may be said as to the reduction of interest on the sales contract from 6½ to 5½ per cent, which plaintiffs claim for the entire life of the contract against the defendants.

Charging $700 real estate commission would plainly be an injustice to the defendants. If the sale to the defendants had been completed, the plaintiffs would have had to pay a commission on it. It failed and they were not required to do

so.[2] Therefore, any such commission on the second sale amounted only to paying the expenses once, which the plaintiffs were committed to do. To try to collect another commission from the defendants is patently wrong. The allowance to plaintiff of $250 for his own time involved in the second sale is anomalous indeed. If persons owning property can hire real estate agents, and at the same time pay themselves for time used in selling their property, a new avenue of income in such matters is opened up. We know of no precedent for such bizarre results and do not care to set one. The award of attorneys' fees is conditioned upon the necessity for incurring them and upon the plaintiffs being justified in their demands. As indicated in this opinion, we think they were not.

The trial court allowed plaintiffs recovery on all of the items above discussed except the interest. The matter of concern here is the theory upon which the trial court made its determination. He filed a written memorandum indicating the basis of his judgment in which he stated:

"Our Supreme Court has apparently held that the forfeiture provisions in a real estate contract may be reexamined by a court of equity not only where the amount sought to be forfeited is excessive, but also when it is claimed the amount stipulated in the contract is inadequate. If this be the state of the law, the writer feels that the courts have perhaps gone too far in opening the door to court construction of these contracts."

There may be some language in cases from this court which justify the above statement. However, we have not been made aware, either by counsel or by our own research, of just what was referred to, unless it be Cooley v. Call discussed below. But we agree with the learned trial judge that such should not be the law; nor is it the law as we understand it.

■ It is true that provisions for "stipulated" or "liquidated" damages in cases of breach of contract have sometimes prescribed forfeiture of amounts so grossly disproportionate to any actual damage that to enforce the provision would shock the conscience. In such instances, the courts, invoking their powers of equity, refuse to enforce such penalties.[3] In that connection however, it is to be kept firmly in mind, that the courts recognize the rights of parties freely to contract and are extremely reluctant to do anything

2. See Hoyt v. Wasatch Homes Inc., 1 Utah 2d 9, 261 P.2d 927; Stewart v. Lesin, 5 Utah 2d 383, 302 P.2d 714.

3. Perkins v. Spencer, 121 Utah 468, 243 P.2d 446, authorities cited therein.

which will fail to give full recognition to such rights.[4]

The plaintiffs here contend that the same rule in reference to liquidated damages is applicable to the situation where the actual damages so greatly exceed the stipulated damages that the court ought to ignore the provision and grant the actual damages. They cite the case of Cooley v. Call.[5] There the court was asked to determine that the forfeiture was so much in *excess* of actual damages as to be unenforceable. The court used the following language:

"If the damages stipulated * * * were *either inadequate* or radically excessive, as compared with the probable damages that could be foreseen by the parties * * * there might be some reason for contending that the damages stipulated were not intended as an exclusive remedy, but such was not the case * * *" (Emphasis added)

The court did not confront nor deal with the question: whether damages were so inadequate as to permit ignoring the contract. We know of no authority supporting the idea that a court can do so. On this point McCormick states:

"If the * * * clause in question * * * provides for liquidated damages * * * the injured party, *though his actual damages may exceed the agreed sum, can recover no more.*"[6]

with which statement we are in accord.

We recognize that generally speaking expressions made by the trial court will not affect the validity of a judgment if it is otherwise sustainable. But this is not true if the statement shows that a material issue was analyzed by the court under a misconception as to the law, where a correct application of the law might well have produced a different result. Doing so would be comparable to letting the jury find a verdict under erroneous instructions.[7]

It seems apparent here that the trial judge was under a misapprehension of law in believing that, against his personal predilection, he was obliged to award the plaintiffs damages beyond that recited in the Earnest Money Receipt. This is reflected both by the statement in the written memorandum, quoted above, and the unwarranted damages awarded as herein above pointed out.

A further and fatal frailty in the judgment is the recital in the findings signed

4. See Jacobson v. Swan, 3 Utah 2d 59, 278 P.2d 294; also Carlson v. Hamilton, 8 Utah 2d 272, 332 P.2d 989.

5. 61 Utah 203, 211 P. 977, 979.

6. McCormick, Damages, Sec. 152.

7. Walker v. Peterson, 3 Utah 2d 54, 278 P.2d 291.

by the trial court that the sellers did not exercise their option to forfeit the defendants' $50 deposit. Notwithstanding plaintiffs' assertion that they would not keep the money as liquidated damages, their conduct must be regarded as speaking louder than their words. The fact is that the defendants' $50 was kept, and that there was no return nor tender of return of the money. We are not unmindful of the testimony to the effect that the $50 was in the custody of the Holt Realty Co. But that company was the appointed agent and acting for the plaintiffs, and the money was thus, constructively at least, in their possession. The plaintiff, as an attorney, assumed to advise the defendants as to the technical effect of the earnest money receipt. In doing so, he was aware, or should have been, that the provision he now relies upon gave him, at best, a choice of two alternatives: either to keep the amount paid in as liquidated damages, or to rely upon the offer to purchase. The fact that the money was kept is incontrovertible evidence that the plaintiffs exercised the option to keep it. That being so, they must be deemed to have kept it for the purpose indicated in the contract, that is, as liquidated damages.

We are led to wonder: suppose the earnest money had been a sum well in excess of the actual loss; the buyer failed, as here; the seller simply retained the money; and another sale was made without loss to the seller. Can it reasonably be supposed that the seller would look up the first buyer and say: "Here is the earnest money deposit which I had the option to keep as liquidated damages, but as I suffered no loss, I now elect to return it to you." This is so inconsistent with the normal pattern of conduct that it is not to be expected. And should the first buyer ask for his money back, it seems a foregone conclusion that he would be met with: "Your earnest money was forfeited as liquidated damages as provided in the receipt. I didn't need to tell you, keeping the money manifest my election to forfeit it."

To the assertion that the failure to return or tender the return of the $50 is a mere technicality, the rejoinder is that the plaintiffs' whole case is itself based upon an attempt to apply a fine print clause in a contract against the defendants, when there is no indication that they understood the situation, and every reasonable inference is to the contrary. We see nothing unconscionable in permitting the defendants to stand upon such defense where they otherwise would be caught in the toils of a deceptive net into which ordinary laymen could easily fall; and with respect to which the defendants gave the entirely reasonable version that it de-

ceived them. Whereas, application of the contract provision as contended for by the plaintiffs would amount to such an unconscionable imposition upon the defendants under the circumstances that courts should not tolerate nor enforce if avoiding doing so can be justified under law. What has been said obviates the necessity of discussing plaintiffs' cross-appeal as to the failure to allow the item of $1,385 interest.

For the reasons stated above the judgment is reversed. Costs to defendants.

A. H. ELLETT, District Judge, concurs.

WORTHEN, J., concurs in the result.

HENRIOD, Justice (concurring in result).

I agree with the result for but one reason, which I consider determinative, and which I believe obviates the necessity of treating any other phase of this case. It was agreed that the sellers, at their option, could retain the amount advanced as liquidated damages if the buyers broke their promise. The buyers broke their promise and the sellers retained the amount advanced. In my opinion such retention constituted an exercise of the option and precluded the sellers from pursuing any other remedy. It is inconsistent for the sellers to insist on holding the buyers to the terms of the contract and at the same time retain the money that they agreed would be the measure of damages upon breach, if they retained it. Such inconsistency must be resolved against the sellers who not only furnished the printed contract, but who had the power of election.

McDONOUGH, Justice (dissenting in part and concurring in part).

I am unable to agree with the conclusion of the majority that the plaintiff Andreasen elected to accept $50 earnest money deposit as liquidated damages. The trial court specifically found that he did not. This finding is amply supported by the evidence. At the time defendant stated to the plaintiff that he would not go through with the contract he offered to forfeit the $50. He was at that time specifically told by the plaintiff that the plaintiff would not accept it and that he would claim some 40 times that much as damages should the defendant repudiate the contract. In view of this testimony and the finding of the trial court, I am unable to see how this court arrived at its conclusion that Andreasen did in fact accept the $50 simply because he did not at that time offer to return the $50 although claiming damages greatly in excess of that amount.

378

The opinion of the court dwells at length about the "fine print" of the contract. This may, of course, be of importance where it bears upon the issue of concealment, deception or fraud, but the defendants themselves made no point of the "fine print" either in the court below or before this court on appeal. No contention is anywhere made that they did not fully understand the provisions of the contract.

I agree that the trial judge was in error in his view that where damages stipulated in the contract appear to be inadequate, the court has the prerogative of adding thereto. The parties are at liberty to bind themselves by contract. It is only where the stipulation as to damages results in such gross inequality as to shock the conscience that a court of equity will refuse to enforce it. Courts are extremely reluctant to interfere with the obligations of contracts. See Carlson v. Hamilton, 8 Utah 272, 332 P.2d 989, and cases there cited.

I am in accord with the observations made concerning damages and therefore believe that the case should be remanded for a new trial for the purpose of correctly assessing damages consistent with the views herein above expressed.

WADE, J., having disqualified himself did not participate herein.