436 P.2d 806

**Melvin ENGSTROM and Elda H. Engstrom, husband and wife, Plaintiffs and Respondents,**

**v.**

**Weldo D. BUSHNELL and Lenna R. Bushnell, Defendants and Appellants.**

**No. 10954.**

Supreme Court of Utah.

Jan. 25, 1968.

---

Elden A. Eliason, Delta, for defendants and appellants.

Duane A. Frandsen, Price, for plaintiffs and respondents.

TUCKETT, Justice:

The plaintiffs filed this action in the District Court of Carbon County asking the court to declare invalid and of no force and effect a promissory note and second mortgage on properties in Price, Carbon County, Utah, and in Orem, Utah County, Utah, and that a certain fund being held by a real estate agency in Burley, Idaho, be declared to be the property of the plaintiffs. The plaintiffs moved for a summary judgment. The plaintiffs' motion was granted. The court's order granting the plaintiffs' motion also provided that the relief sought by the plaintiffs pursuant to the motion for a summary judgment would not become effective until a determination by the court of the issues raised by the defendants' counterclaim. The matter was ordered transferred to the trial calendar for trial upon the issues raised by the counterclaim. The defendants appeal to this court from the order granting a summary judgment in favor of the plaintiffs. It is doubtful whether this was a final judgment as contemplated by Rule 72(a), Utah Rules of Civil Procedure. However, the court was not asked to determine that problem.

The transactions involved in this case arose out of a contract entered into by the parties for the sale of land in Millard County, Utah. The appeal to this court seeks a reversal of the lower court's interpretation of the contract entered into by the parties. By the terms of the contract the Bushnells agreed to sell to the Engstroms a ranch containing approximately 840 acres in Millard County. The terms of the contract provided that the Engstroms were to pay the sum of $500 at the time of execution of the contract and the balance of $57,500 in installments of $4,000 on December 20, 1963, and like installments annually until the sum of $35,000 and interest had been paid. In addition to the above mentioned installment payments the Engstroms were to pay $3,500 on or before September 1, 1963, $4,000 on or before December 20, 1964, and further installment payments until the sum of $23,000 together with interest had been paid. The installment payments amounting to $35,000 were undoubtedly intended to retire the mortgage in that amount in favor of Equitable Life Assurance Society of the United States. The balance of the installment payments in the sum of $23,000 appears to have been intended to pay the Bushnells for their equity in the ranch. The installment payments coincided with those of the note set forth in the second of the payment provisions of the contract and second mortgages we are here con-

cerned with. It would seem that the note and mortgages were intended to provide an additional security to the Bushnells for their equity in the ranch. The parties entered into a supplemental agreement wherein Engstroms agreed to permit the Bushnells to pasture 100 head of cattle together with 50 head of suckling calves for a period of three months during the year 1963. The Engstroms further agreed that they would not plow any land then planted to grass or alfalfa without the approval of the Bushnells.

The Engstroms defaulted in their payment due on September 1, 1963, and based on that default together with other breaches of the real estate contract claimed by the Bushnells, the latter by letter dated October 1, 1963, notified the Engstroms that they elected to terminate the contract unless the defaults were cured within five days. From failure of the Engstroms to cure the defaults the Bushnells re-entered and took possession of the ranch.

Under the terms of the real estate contract entered into by the parties the sellers, the Bushnells, had the option of three alternative remedies. The Bushnells had the right to declare the contract forfeited after notice and failure upon the part of the Engstroms to cure any default or defaults in the performance of the contract on their part. The Bushnells also had the option of suing to recover delinquent installments, and as a third alternative they had the right to proceed to foreclose the contract pursuant to the laws pertaining to the foreclosure of mortgages. The Bushnells elected to declare the contract terminated and to re-enter and take possession of the property. The Bushnells in electing to forfeit the contract were entitled to retain as liquidated damages the $500 down payment made by the Engstroms.[1] The Bushnells in the court below and on appeal earnestly contend that the promissory note secured by the three second mortgages was a part of the down payment which they were entitled to also claim as liquidated damages. The answer to the Bushnells' contentions in this regard is that the contract does not so provide. As the trial judge pointed out in his memorandum decision, if the Bushnells were permitted to retain the $500 in cash paid down at the time of the signing of the contract and were also permitted to recover on the note for $15,500 their recovery for the breach of contract would amount to $16,000 in addition to the performance promised by the Engstroms in their supplemental agreement. It would appear that such a recovery on the part of the Bushnells would far exceed any damages suffered by them by reason of the Engstroms'

1. Andreasen v. Hansen, 8 Utah 2d 370, 335 P.2d 404; McMullin v. Shimmin, 10 Utah 2d 142, 349 P.2d 720.

possession of the ranch for a period of approximately four months.[2]

We are of the opinion that the Bushnells having elected to terminate the contract are entitled to retain the down payment as provided therein, but they are not entitled to retain in addition thereto the note and mortgages executed simultaneously with the contract and as a part of the transaction.

The decision of the trial court is affirmed. Costs to the plaintiffs.

CROCKETT, C. J., and CALLISTER and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting):

I dissent.

The plaintiffs claim that the note in question was given merely as security for that part of the debt shown by the contract to fall due on the dates when the installments of the note fall due. The defendants say that the note was given in payment of that part of the contract which was payable in the same amount and on the same *dates* of the note. It is to be observed that the defendants required three mortgages to be given by plaintiffs as security for the *note*.

One cannot tell from reading the contract whether the delivery of the note amounted to an absolute payment without taking evidence of the intention of the parties at the time the note was given. See 70 C.J.S. Payment §§ 116–117.

The fact that a contract has been reduced to writing proves only that the parties thereto agreed to those words, but a question of what the words mean concerns the court in the interpretation of any contract. A party may agree to sell his farm for ten pounds of sugar. The purchaser may go into possession and tender ten pounds of sugar, but it would not be in the interest of justice to close the mouth of the seller and prevent his showing to the court that both parties had consistently called a thousand dollars a pound of sugar and that in this transaction both parties meant that the purchaser should pay ten thousand dollars an not ten pounds of sugar. See Corbin on Contracts, § 18. The same authority at § 539 says:

When an agreement has been reduced to writing, one that is assented to as the full and operative statement of terms, the writing has been described as an "integration." This term may have some advantages; but there is danger that the adoption of so imposing and so unfamiliar a term may mislead us into giving effects to such a document that ought not to be given. It has been asserted that the interpretation of such a document is governed by special prin-

2. Andreasen v. Hansen, supra.

ciples, that an "integration" may bind both parties in accordance with a meaning that was given to it by neither one of them. It is believed that this assertion is not correct. It is true that in such a case the parties are found to have assented to the written words as the definite operative expression of their minds. This is an assent to those words, not to any particular meaning of those words. When the court determines that the document is an "integration," it has determined only that the parties assented to it as the final verbal expression of their agreement. As yet there is no determination of the meaning of the words; and there is no determination that the parties have assented to be bound in accordance with a particular meaning. Such an integration may make antecedent expressions inoperative; but it does not deprive them of evidential value in the process of interpreting the language of the integration.

\*     \*     \*     \*     \*     \*

There is no sound reason for holding that parties are bound by any contract, integrated or not, in accordance with a meaning which the court now finds as a fact that neither of them gave to it. This is true even though the court thinks that this meaning is the only reasonable one, or is the one that accords with "good English" and the leading dictionaries, or is one that would be given to the words by a "normal" speaker or writer, or is the one that accords with ordinary and common usage in the local community or in the local trade or profession.

This matter was before the trial court on a motion for summary judgment, which motion was granted. The trial court had to determine this matter upon the pleadings only, because the depositions of the defendants had not been opened and published. However, the answer and counterclaim on file was sworn to by one defendant, and it thus is to be considered as an affidavit. That answer says that as a down payment the plaintiffs gave the sum of $500 plus a promissory note for the sum of $15,500. In the counterclaim defendants allege that "the only down payment or other payment paid by the Buyers, 'Engstrom' to the Sellers, was and is the Promissory Note of $15,500.00 with the security together with $500.00 paid to the Real Estate Agency."

The pleadings set up an issue as to whether or not the note was a part of the down payment. The phrase "down payment" is not mentioned in the contract. The statement therein is "$500.00 cash, the receipt of which is hereby acknowledged, and the balance of $57,500.00 shall be paid as follows:" [Here is set forth a parallel series of payments, one series being identical in time and amount to that of the note.]

Rule 56(e), U.R.C.P., says: "* * * When a motion for a summary judgment is made and supported as provided in this rule, [by affidavit] an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

While the foregoing may indicate that the defendants were the ones who were technically entitled to the summary judgment, yet from what is said herein I believe it the wiser course for the trial judge to hear this matter before making a final determination on the merits.

Sec. 538, Corbin on Contracts, indicates that it is always proper to take testimony as to the meaning and intention of the parties in interpreting a contract. If, as defendants claim, both parties agreed that there must be a down payment of $16,000 before the plaintiffs could go into possession, it would not be carrying out the contract of the parties to hold to the contrary.

The claim of the defendants is bolstered by the fact that the mortgages were given to secure the note only, and if the note did not take the place of the promises in the contract, it would seem that the defendants should have insisted that the mortgages secure the contract instead of the note.

Sec. 298, Payments, 40 Am.Jur., is apropos of this question and is as follows:

The elementary principle of law that it is the province of the jury to determine the facts and that of the court to state the law is applicable in actions in which the issue of payment is involved. Thus, whether a check is given and accepted as absolute payment is a question of fact to be determined by the jury on the evidence presented. Similarly, although by some courts said to be a mixed question of law and fact, it is generally held that where there is a conflict of evidence or dispute whether the debt was to be extinguished by the giving of the note, or whether the note was simply an evidence of the debt, or taken as collateral security or conditional payment, it becomes a question of fact for the jury, and not one of law for the court. * * *

In this case the note was given at the same time the contract was signed. It was a part of the same transaction, and in that connection the statement in § 280, Payments, supra, states:

* * * It is held, however, that the burden is on the creditor to show that a note delivered at the time of a contract out of which the indebtedness arose was not intended as payment. * * *

**256**

The trial court seemed to feel that to permit $16,000 to be forfeited would be unconscionable, but that matter was not before him. The only question before him was whether or not the note was given as a down payment. If, in fact, it is found that it was given as a down payment, the plaintiffs may point out to the court that it would be unconscionable to permit the entire amount to be forfeited, but we are not concerned with that phase of the case now because the defendants have been dismissed without having an opportunity to prove, as they claim they can, that the note was given as a down payment on the purchase of the ranch.

I would remand the case for further proceedings in accordance with this dissent.