Gus G. ANGELOS, Plaintiff, Respondent and Cross-Appellant,

v.

FIRST INTERSTATE BANK OF UTAH, a Utah banking corporation, aka Walker Bank & Trust Company, et al., Defendant, Appellant and Cross-Respondent,

v.

Michael T. RUSSELL, Defendant, Respondent, Co-Appellant and Cross-Respondent.

No. 18001.

Supreme Court of Utah.

Sept. 16, 1983.

Michael R. Murphy, Salt Lake City, for defendant, appellant and cross-respondent.

Keith W. Meade, Claron Spencer and James Brown, Salt Lake City, for plaintiff, respondent and cross-appellant.

DURHAM, Justice:

This is an appeal from a judgment awarding damages to the plaintiff Dr. Gus G. Angelos against the defendants First Interstate Bank of Utah (hereafter the "Bank"), Michael T. Russell, and Rosemary McCormick. Based on the jury's special verdict, the trial court found that the defendants were jointly and severally liable to Dr. Angelos for damages resulting from McCormick's embezzling of Dr. Angelos' monies, forging of his endorsement on checks from his patients, and depositing of them into her personal account with the Bank. Dr. Angelos, the Bank and Russell appeal the decision of the trial court. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

Prior to 1967, Dr. Angelos practiced orthodontics in California. McCormick was a chairside assistant who worked in the office where Dr. Angelos practiced. In anticipation of the relocation of his office to Salt Lake City, Dr. Angelos invited McCormick to work for him there.

In 1967, Dr. Angelos opened his dental office in Salt Lake City, with McCormick as his receptionist, assistant and bookkeeper. Shortly thereafter, Dr. Angelos opened a business bank account at the Bank's Sugarhouse branch and authorized McCormick to deposit checks which he had endorsed into that account. Dr. Angelos' bookkeeping system consisted of three parts: a receipt book, a patient ledger card and a daily production sheet. The system was designed to permit carbon paper to be inserted between the three documents so that one entry of a payment by a patient would be reflected on all three documents. Occasionally, Dr. Angelos asked McCormick to record a patient's payment on the patient's ledger card only, and to omit recording it on the daily production sheet. This procedure would give Dr. Angelos income which would not be reflected on the daily production

sheet and would not be easily detected from his records. As early as 1967, McCormick began taking cash from Dr. Angelos' receipts and/or "borrowing" money from petty cash. Thereafter, McCormick, using Dr. Angelos' method to circumvent the accounting system, took some of the patient's checks, forged Dr. Angelos' endorsement and deposited them in her own personal account at the Bank's Sugarhouse branch.

Early in 1968, McCormick met and began dating Russell. On May 2, 1969, McCormick married Russell, which marriage terminated in divorce on June 18, 1971. During the period from 1971 to June of 1977, McCormick and Russell maintained an amicable relationship and purchased several investment properties together. In purchasing these properties, Russell usually advanced the down payment and secured the financing, while McCormick usually made the monthly payments out of the funds in her Sugarhouse account. During that period, McCormick also wrote a number of checks on her Sugarhouse account directly to Russell or for his benefit. Although Russell never forged Dr. Angelos' endorsement on the back of any check, two checks bearing Dr. Angelos' forged endorsement were deposited directly into Russell's personal account at the Bank. In July of 1977, McCormick married Frederick McCormick and continued to embezzle funds from Dr. Angelos, but ceased sharing the monies with Russell. Finally, in September of 1978, Dr. Angelos discovered McCormick's embezzlement scheme.

On October 3, 1978, Dr. Angelos filed suit against McCormick in the Second Judicial District Court to recover the embezzled funds. Subsequently, on a writ of attachment, Dr. Angelos seized her bank account, recovering $6,020.96. On October 13, 1978, while the suit against McCormick was still pending, Dr. Angelos filed suit against Russell in the Third Judicial District Court to recover the monies Russell had received from McCormick or that were used for his benefit. On March 30, 1979, Dr. Angelos amended his complaint to add McCormick and the Bank as defendants, alleging that

the Bank had wrongfully accepted checks bearing a forged endorsement. The Bank cross-claimed against McCormick for breach of warranty on the checks and against Russell for his wrongful and/or fraudulent conduct in inducing McCormick to breach those warranties.

At the conclusion of trial on August 7, 1980, the jury returned a Special Verdict which found: (1) that Dr. Angelos, as a reasonably prudent businessman, knew or reasonably should have known of the embezzlement by McCormick before March of 1975 and before September of 1978;[1] (2) that the Bank did not act in accordance with reasonable commercial banking practices in handling the checks presented to it by McCormick; (3) that prior to May of 1975 the Bank knew or should have known that Dr. Angelos' endorsements on the checks presented by McCormick were forged; (4) that Dr. Angelos' conduct in handling his business affairs did not substantially contribute to McCormick's embezzlement and did not induce the Bank to negotiate the embezzled checks; (5) that Russell knew of the embezzlement and received embezzled funds for which he failed to give reasonable consideration; and (6) that Russell directed, encouraged or requested McCormick to embezzle from Dr. Angelos with the intent of benefiting himself from McCormick's wrongful conduct and did in fact benefit to the loss or detriment of Dr. Angelos. On July 21, 1980, the trial court, pursuant to the Special Verdict, entered judgments for Dr. Angelos on his claims against the Bank, McCormick and Russell. The trial court granted a default judgment against McCormick on the Bank's cross-claim, but denied the Bank's cross-claim against Russell. Dr. Angelos, Russell and the Bank appeal the trial court's ruling.

This appeal involves two sets of claims: (1) Dr. Angelos' claims against the Bank and Russell and (2) the Bank's claims against Russell. With respect to Dr. Angelos' claims, Dr. Angelos argues that the trial court erred in applying the four-year statute of limitations found in U.C.A., 1953, §§ 78–12–1 & –25 to limit his recovery. Dr. Angelos also appeals the trial court's determination of damages. The Bank claims that the trial court erred in granting judgment against it because Dr. Angelos' claims are barred by the doctrines of waiver, estoppel, laches, and avoidable consequences. Russell claims error by the trial court because Dr. Angelos' claims are barred by the doctrines of avoidable consequences and election of remedies. With respect to the Bank's claims against Russell, the Bank argues that the trial court erred in ruling that Russell had no liability to the Bank for the embezzled monies he received from McCormick. In reply to the Bank's contention, Russell argues that the Bank's claims are barred by the doctrine of avoidable consequences. We address the issues in the above order.

### Dr. Angelos' Claims

On appeal, Dr. Angelos' first claim is that the trial court erred in applying the four-year statute of limitations contained in U.C.A., 1953, §§ 78–12–1 & –25, rather than the unlimited statute of limitations contained in U.C.A., 1953, § 78–12–34 (1977) (repealed July 1, 1981, 1981 Utah Laws ch. 16, § 1). Section 78–12–34 provided that there was no statute of limitations barring recovery by one who has deposited money with a financial institution:

> To actions brought to recover money or other property *deposited* with any bank, trust company or savings or loan corporation, association or society *there is no limitation.*

*Id.* (emphasis added). By the express terms of the statute and the decisions of this Court, § 78–12–34 has been held to apply only where the cause of action arises out of a plaintiff's relation as a "depositor" with the bank. *See, e.g., Esponda v. Ogden State Bank,* 75 Utah 117, 283 P. 729 (1929); *Verdi v. Helper State Bank,* 57 Utah 502,

---

1. The finding regarding March of 1975 is relevant with respect to the running of the statute of limitations. The finding regarding September of 1978 is the date which Dr. Angelos actually discovered McCormick's embezzlement scheme.

196 P. 225 (1921); *Larsen v. Utah Loan & Trust Co.,* 23 Utah 449, 65 P. 208 (1901). *But see Strong v. Missouri-Lincoln Trust Co. of St. Louis,* Mo.App., 263 S.W. 1038 (1924). To hold that Dr. Angelos is a "depositor" by reason of McCormick's forging of his endorsement and depositing of the checks into her own personal account would be to contort the plain meaning of the term "deposited" as it is used in § 78–12–34. There are no Utah cases which support such an anomalous application. Moreover, the policy behind § 78–12–34 is to protect persons who have deposited money in a bank account from being barred from claiming *that* money years later. We find no policy consideration that would justify bringing the present case within the purview of that statute. We therefore hold that Dr. Angelos is not a "depositor" within the meaning of § 78–12–34, and thus, the trial court was correct in applying the four-year statute of limitations contained in U.C.A., 1953, §§ 78–12–1 & –25.[2]

■ In Dr. Angelos' second point on appeal, he claims that the trial court erred in its award of damages because it did not consider all of the available evidence. Because of the numerous documents and the absence of "all" of the Bank's records of McCormick's account, the parties agreed, pursuant to a motion made in chambers and during trial, that the extent of Dr. Angelos' loss would be decided by a master if liability were found to exist. Now that liability has been found to exist, if Dr. Angelos can provide additional evidence that has not been previously considered by the trial court, he is entitled to a determination of the amount of his losses in light of that additional evidence. We therefore remand this cause of action to the trial court to determine whether Dr. Angelos can produce additional evidence and, if so, to determine the extent of Dr. Angelos' damages in light of the new evidence.

■ On appeal, the Bank also claims that the trial court erred in its award of dam-

ages because its determination included "some . . . checks [which] were endorsed in blank by the proper payee [*i.e.,* Dr. Angelos]." When Dr. Angelos endorsed some of his patients' checks in blank, they became payable to bearer and could be negotiated by delivery alone until specially endorsed. *See* U.C.A., 1953, § 70A–3–204(2). Because those checks were bearer instruments, the Bank is not liable to Dr. Angelos for McCormick's theft and subsequent cashing of them unless the instruments bore a restrictive endorsement at the time of their theft. *See* J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 15–4, at 594–97 (2d ed. 1980). Thus, on remand, the trial court's award of damages in favor of Dr. Angelos and against the Bank should exclude the amounts of those checks which were properly endorsed in blank by Dr. Angelos.

The Bank also argues that the trial court erred in its ruling that the doctrines of waiver, estoppel, laches, and avoidable consequences are not a bar to Dr. Angelos' right of recovery. The applicable standard of review is as follows:

> While it is true in equity cases this Court may review questions of both law and fact we are not bound to substitute our judgment for that of the trial court, and because of its advantaged position we give considerable deference to its findings and judgment.

*Nupetco Associates v. Jenkins,* Utah, 669 P.2d 877, 883 (1983) (quoting *Ream v. Fitzen,* Utah, 581 P.2d 145, 147 (1978)). *See also, e.g., Dang v. Cox Corp.,* Utah, 655 P.2d 658 (1982); *Parks Enterprises, Inc. v. New Century Realty, Inc.,* Utah, 652 P.2d 918 (1982).

■ With respect to the doctrine of waiver, this Court has stated:

> To constitute waiver, one's actions or conduct must be distinctly made, must evince in some unequivocal manner an intent to waive, and must be inconsistent with any other intent.

---

2. We note that the three-year statute of limitations contained in U.C.A., 1953, §§ 78–12–1 & –26(4) (regarding an action based on a liability created by a statute) may be more appropriate, but do not discuss its application because this issue has not been raised by the parties.

*Hunter v. Hunter,* Utah, 669 P.2d 430, 432 (1983) (citations omitted). Such action or conduct is missing in the present case. Thus, the trial court's finding that Dr. Angelos did not waive his rights against the Bank was proper.

■ With respect to the doctrine of estoppel, this Court has stated:

The doctrine of estoppel has application when one, by his acts, representations, or conduct, or by his silence when he ought to speak, induces another to believe certain facts exist and such other relies thereon to his detriment.

*Leaver v. Grose,* Utah, 610 P.2d 1262, 1264 (1980) (citations omitted). *See also, e.g., Celebrity Club, Inc. v. Utah Liquor Control Commission,* Utah, 602 P.2d 689, 694 (1979) (setting forth a breakdown of the essential elements of estoppel). Again, there is no action or conduct by Dr. Angelos that would support a finding of estoppel. Furthermore, the trial court found that Dr. Angelos did not induce the Bank to act to its detriment. Moreover, the purpose of the doctrine of estoppel is "to rescue from loss a party who has, *without fault,* been deluded into a course of action by the wrong or neglect of another." *Rowley v. Marrcrest Homeowners' Association,* Utah, 656 P.2d 414, 418 (1982) (quoting *Morgan v. Board of State Lands,* Utah, 549 P.2d 695, 697 (1976)) (emphasis added). In the present case, the Bank is not "without fault." Thus, the trial court's finding that Dr. Angelos was not estopped to assert his rights against the Bank was also proper.

■ This Court has previously set forth the doctrine of laches as follows:

Laches is not mere delay, but delay that works a disadvantage to another. To constitute laches, two elements must be established: (1) The lack of diligence on the part of plaintiff; [and] (2) An injury to defendant owing to such lack of diligence.

*Papanikolas Brothers Enterprises v. Sugarhouse Shopping Center Associates,* Utah, 535 P.2d 1256, 1260 (1975) (footnotes omitted). In finding that the Bank "was not prejudiced by the passage of time," the trial court implicitly found that the second element of the doctrine of laches was not satisfied. On the facts of the present case, where the Bank's injury is attributable to its own actions and conduct, or lack thereof, we affirm the trial court's ruling that Dr. Angelos' cause of action against the Bank is not barred by the doctrine of laches.

■ The doctrine of avoidable consequences, also referred to as mitigation of damages, generally operates to prevent one against whom a wrong has been committed from recovering any item of damage arising from the wrongful conduct which could have been avoided or minimized by reasonable means. *See, e.g., Jankele v. Texas Co.,* 88 Utah 325, 332–34, 54 P.2d 425, 428–29 (1936); C. McCormick, *Handbook on the Law of Damages* § 33, at 127–30 (1935). The Bank contends that because Dr. Angelos was negligent in failing to discover McCormick's embezzlement, he is precluded by the doctrine of avoidable consequences from recovering any damages that he has suffered. The Bank's argument fails for two reasons. First, McCormick's embezzlement consisted of a series of wrongful acts rather than one continuous act as the Bank contends. Under the doctrine of avoidable consequences, "[o]ne need never take steps in advance to avoid the consequences of a future threatened wrong ...," but rather, need only avoid or minimize damages that arise out of a wrong that has already been committed. C. McCormick, *supra,* § 37, at 137. *Accord* Restatement (Second) of Torts § 918(1) (1979) (barring recovery of damages that one could have avoided by reasonable efforts "after" the commission of the tort). Thus, Dr. Angelos' negligence in failing to discover McCormick's past embezzlement of funds does not, under the doctrine of avoidable consequences, preclude him from recovering for damages sustained by McCormick's subsequent and future embezzlement of funds. Second, the doctrine of avoidable consequences does not prevent Dr. Angelos from recovering where the Bank was itself in as good, if not a better, position to avoid the consequences or mitigate the damages caused by McCormick's

embezzlement. *See, e.g., Alexander v. Brown,* Utah, 646 P.2d 692, 695 (1982). Thus, we affirm the trial court's ruling that Dr. Angelos is not precluded by the doctrine of avoidable consequences from recovering the damages he sustained.

Russell also appeals, claiming error by the trial court in ruling that Dr. Angelos' claims are not barred by the doctrines of avoidable consequences and election of remedies. Our previous discussion regarding the doctrine of avoidable consequences is also applicable to, and dispositive of, Russell's contention. Thus, we need only address his contention regarding the doctrine of election of remedies.

 Russell contends that Dr. Angelos' pursuit of a judgment against the Bank necessarily constitutes an election of remedies and therefore bars a cause of action against Russell. This contention is unfounded. This Court has previously stated that:

> The doctrine of election of remedies is a technical rule of procedure and its purpose is not to prevent recourse to any remedy, but to prevent double redress for a single wrong. Said doctrine presupposes a *choice* between inconsistent remedies, a knowledgeable selection of one thereof, free of fraud or imposition, and a resort to the chosen remedy evincing a purpose to forego all others.

*Royal Resources, Inc. v. Gibralter Financial Corp.,* Utah, 603 P.2d 793, 796 (1979) (emphasis in original) (footnotes omitted). The doctrine of election of remedies does not preclude Dr. Angelos from receiving a judgment against both the Bank and Russell. By his own pleading, Dr. Angelos sought (1) a judgment against the Bank for the amount of checks that it cashed with Dr. Angelos' forged endorsement and (2) a judgment against either or both McCormick and Russell for the damages caused to Dr. Angelos by McCormick's embezzlement which exceeds the amount of any judgment rendered against the Bank. The doctrine of election of remedies is inapplicable to the present case because Dr. Angelos is not seeking or obtaining "double redress for a single wrong." *Id.* However, the trial court entered judgment for Dr. Angelos and against the Bank, Russell and McCormick, jointly and severally. This judgment is inconsistent with Dr. Angelos' prayer for relief for a judgment against Russell only for those damages suffered by Dr. Angelos in excess of the amount of the judgment against the Bank. We therefore reverse the trial court's ruling of joint and several liability and remand this case for entry of a judgment consistent with the relief requested.

### The Bank's Claims

With respect to the Bank's cross-claims against Russell, the Bank argues that the trial court erred in ruling that Russell had no liability to the Bank for the embezzled monies he received from McCormick. The trial court found, as did the jury in its special verdict, that, without giving any consideration, Russell received funds from McCormick which he knew or should have known belonged to Dr. Angelos. However, the trial court denied the Bank judgment against Russell because it found that Russell had not perpetrated a fraud on the Bank and had not breached any warranty in that Russell did not present any checks for payment or forge any signatures.

 The California Court of Appeals has set forth the rule of liability as follows:

> It needs no citation of authority to support the proposition that when a person has stolen, embezzled or misappropriated another's property the injured party should be restored to the possession of his property or its equivalent so long as it has not passed into the hands of a bona fide purchaser without notice.

*Church v. Bailey,* 90 Cal.App.2d 501, 504, 203 P.2d 547, 549 (1949). *Accord Newco Land Co. v. Martin,* 358 Mo. 99, 213 S.W.2d 504 (1948). This Court has adopted and followed this rule. *See, e.g., Corporation of the President of the L.D.S. Church v. Jolley,* 24 Utah 2d 187, 467 P.2d 984 (1970). The above-quoted principle has also been extended to banks seeking to recover money paid out on forged checks. *See First Feder-*

*al Savings & Loan Ass'n v. Northside State Bank,* Tex.Civ.App., 436 S.W.2d 393 (1969). *See generally* 5B & 6 Michie, *Banks and Banking* ch. 9, §§ 264–70 & ch. 12, §§ 20–27 (1973 & 1975). Because Russell is not a bona fide purchaser, he is liable to the Bank for the amount of converted funds that he received from McCormick. We therefore reverse the judgment of the trial court and remand this cause of action for a determination of the amount of converted funds that can be traced through McCormick to Russell and therefore are recoverable by the Bank.

Finally, Russell argues that the Bank's claims are barred by the doctrine of avoidable consequences. Our previous discussion regarding that doctrine is also applicable to, and dispositive of, this contention.

We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., OAKS, and HOWE, JJ., and DAVID SAM, District Judge, concur.

STEWART, J., having disqualified himself, does not participate herein.

DAVID SAM, District Judge, sat.