Kenneth F. PALMER, Jr., and Rebecca A. Palmer, husband and wife, Plaintiffs and Appellants and Cross–Appellees,

v.

Edward HAYES and Stephanie Hayes, husband and wife; Maple Hills Realty, a Utah corporation; Ronald L. Marshall; Tom Baker; and Carol D. Edgmon, Defendants and Appellees and Cross–Appellants.

No. 940416–CA.

Court of Appeals of Utah.

March 24, 1995.

---

Robert H. Henderson, Salt Lake City, for Palmers.

Lester A. Perry, Salt Lake City, for Hayeses.

1.   Senior Judge Regnal W. Garff, acting pursuant to appointment under Rule 3–108(4), Utah Code

Before BENCH, GARFF,[1] and JACKSON, JJ.

## OPINION

**BENCH, Judge:**

Kenneth and Rebecca Palmer (the Palmers) appeal the trial court's grant of summary judgment in favor of Edward and Stephanie Hayes (the Hayeses). The Hayeses cross appeal from the trial court's denial of their request for attorney fees. We affirm.

## FACTS

The Palmers offered their house for sale through Maple Hills Realty. On December 7, 1992, the Hayeses, also represented by Maple Hills Realty, entered into an Earnest Money Sales Agreement (Agreement) with the Palmers. The Hayeses gave Maple Hills Realty $2000 as an Earnest Money Deposit pursuant to the Agreement.

In January 1993, the Hayeses rescinded their offer. Maple Hills Realty sent the Hayeses a form that would release back to them the Earnest Money Deposit, and that would also release Maple Hills Realty from any claims of liability against the brokerage. Mr. Hayes, asserting that only the parties could put any conditions on the release of the deposit, refused to sign the release. In a letter dated February 8, 1993, the Hayeses informed Maple Hills either to return the deposit to them, or to inform them of any claim the Palmers had against the deposit. The Palmers' attorney, Michael D. Blackburn, wrote a letter to Maple Hills Realty on March 8, 1993, stating in pertinent part:

> We have been informed that you retain a $2,000.00 earnest money deposit in your trust account. We also understand that Mr. and Mrs. Hayes have requested a refund of this deposit. Demand is hereby made that this money not be removed from the trust account for any reason without the prior written permission of Kenneth F. and Rebecca A. Palmer.

of Judicial Administration.

Several months later, the Palmers filed suit seeking damages, alleging that the Hayeses had defaulted on the Agreement. The Hayeses moved for summary judgment on the ground that, by not releasing the Earnest Money Deposit, the Palmers had elected the remedy of liquidated damages. The Hayeses also sought attorney fees under the Agreement. The trial court granted summary judgment in favor of the Hayeses but denied their claim for attorney fees.

## ISSUES

The issues before this court are: 1) did the Palmers' failure to release the Earnest Money Deposit to the Hayeses before commencing their action for damages constitute, as a matter of law, an election of the remedy of liquidated damages; and 2) did the trial court properly determine that the Hayeses were not entitled to an award of attorney fees.

## STANDARD OF REVIEW

■ In appeals from summary judgment, we review the facts in a light most favorable to the nonprevailing party. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1386 (Utah 1989). We review summary judgments under the "correctness" standard, affording the trial court's legal conclusions no deference. *Neiderhauser Builders & Dev. Corp. v. Campbell*, 824 P.2d 1193, 1196 (Utah App.1992).

## ANALYSIS

### Earnest Money Deposit

■ The Agreement that the Hayeses and the Palmers signed is a standardized form approved by the Utah Real Estate Commission, which provides that "[in] the event of default by buyer, seller may elect to either retain the earnest money as liquidated damages, or to institute suit to enforce any rights of seller." The law concerning election of remedies for breach of an Earnest Money Security Agreement is clearly stated in a series of supreme court decisions beginning with *Andreasen v. Hansen*, 8 Utah 2d 370, 335 P.2d 404 (1959).

■ The facts in *Andreasen* are similar to those in the present case. In *Andreasen*, the defendants signed an "Earnest Money Receipt and Offer to Purchase" and deposited $50 with the realty company that represented the plaintiffs. The defendants later rescinded their offer. Language in the Earnest Money Receipt and Offer to Purchase provided that

> [i]n the event the purchaser fails to pay the balance of the said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages.

335 P.2d at 406 (emphasis omitted). The plaintiffs "did not exercise their option to forfeit the defendants' $50 deposit ... [and] there was no return nor tender of return of the money." *Id.* at 408. The supreme court concluded that the plaintiffs could not sue for damages because the failure to tender the earnest money back to the defendants constituted "incontrovertible evidence that the plaintiffs exercised the option to keep it." *Id.* The supreme court held that the plaintiffs "must be deemed to have kept it for the purpose indicated in the contract, that is, as liquidated damages." *Id.* *Andreasen* therefore stands for the proposition that a seller's failure to offer to return earnest money deposits precludes the seller from pursuing other remedies. *See also Dowding v. Land Funding Ltd.*, 555 P.2d 957, 957 (Utah 1976) (holding that because neither seller nor his agent offered to return deposit, seller's damages were limited to the deposit amount); *Close v. Blumenthal*, 11 Utah 2d 51, 53, 354 P.2d 856, 857 (1960) (holding sellers that did not offer to return deposit opted for liquidated damages and were precluded from seeking specific performance); *McMullin v. Shimmin*, 10 Utah 2d 142, 144–45, 349 P.2d 720, 721 (1960) (same).

The Palmers contend that the holdings in the *Andreasen* line of cases are inconsistent with the election of remedies doctrine defined in *Angelos v. First Interstate Bank of Utah*, 671 P.2d 772, 778 (Utah 1983). *Angelos* defined election of remedies as a

> technical rule of procedure and its purpose is not to prevent recourse to any remedy,

but to prevent double redress for a single wrong. Said doctrine presupposes a *choice* between inconsistent remedies, and knowledgeable selection of one thereof, free of fraud or imposition, and a resort to the chosen remedy evincing a purpose to forego all others.

671 P.2d at 778 (quoting *Royal Resources, Inc. v. Gibralter Fin. Corp.*, 603 P.2d 793, 796 (Utah 1979) (footnote omitted)).

Contrary to the Palmers' contention, the *Andreasen* line of cases does not conflict with *Angelos*. The *Andreasen* line does not dispute the fact that election of remedies is a procedural rule; the cases simply define the procedure for electing remedies. The cases uniformly hold that before a seller may pursue a remedy other than liquidated damages, the seller must release any claim to the deposit money. *Andreasen*, 335 P.2d at 408; *Dowding*, 555 P.2d at 957; *Close*, 354 P.2d at 857; *McMullin*, 349 P.2d at 721.

The Palmers further contend that the supreme court's holdings in *Andreasen* and its progeny are not dispositive in this case because the rules governing escrow accounts and agency responsibilities have changed. The Regulations of the Utah Real Estate Commission regarding release of deposits merely provide, however, that "funds may be disbursed by the principal broker only if a written release is obtained from the parties not receiving the funds." *See* Utah Admin.R. 162–4.2.7.3 (1994). The Palmers therefore needed only to indicate to Maple Hills Realty, in writing, that they released the deposit money to the Hayeses. Then they could have proceeded with their suit for damages. There is nothing in the record to indicate that they ever released the deposit. To the contrary, the record shows the Palmers' only communication concerning the deposit was that they had not released it. In a letter dated March 8, 1993, the Palmers' attorney wrote to Maple Hills Realty and demanded that Maple Hills Realty not release the deposit without prior written permission of the Palmers. The record also reflects the Palmers' request that the trial court retain the

deposit and apply it to any damages awarded under their complaint.

The Palmers argue that, because Maple Hills Realty served as agents for both parties, the Palmers could not assert control over the disposition of the deposit. However, there is nothing in the record to show that Maple Hills Realty retained the money contrary to any written instruction by either of the parties.[2] Regardless of Maple Hills Realty's duties as escrow agent, the Palmers had an affirmative duty to release their interest in the deposit money to the Hayeses before they filed their suit for damages. In sum, the trial court properly determined that, by failing to release the deposit money, the Palmers elected to retain it as liquidated damages. The trial court therefore properly granted the Hayeses summary judgment.

### Attorney Fees

■ In their cross appeal, the Hayeses seek attorney fees from the Palmers. The Hayeses base their claim on alternative theories. First, the Hayeses argue that the Agreement provides them a basis for an award of attorney fees. Before the trial court, the Hayeses based their claim for attorney fees exclusively on paragraph "N" of the Agreement. Paragraph "N" provides, in pertinent part, that

> [b]oth parties agree that should either party default in any of the covenants or agreements herein contained, the defaulting party shall pay all costs and expenses including a reasonable attorney's fee, which may arise or accrue from enforcing or terminating this Agreement or in pursuing any remedy provided hereunder or by applicable law, whether such remedy is pursued by filing suit or otherwise.

The trial court denied the Hayeses' claim for attorney fees on the ground that the Palmers had not defaulted, but had merely elected their remedy.

At the hearing on the Hayeses' motion for summary judgment, the trial court presumed, with the parties' tacit approval, that the Hayeses had defaulted on the Agreement

---

**2.** Maple Hills Realty therefore retained the deposit because neither party instructed it to re-

lease the deposit to the other party. *See* Utah Admin.R. 162–4–2.7.3 (1994).

when they did not complete their purchase of the house. At the hearing, both parties addressed not whether the Hayeses had defaulted, but whether the Palmers had appropriately elected their remedy. Given the posture of the case before the trial court, the Hayeses are in no position to claim that the Palmers defaulted by not releasing the earnest money deposit before proceeding with a suit for damages. The trial court was therefore correct in ruling that any mistake by the Palmers in electing their remedy was not a "default" that entitled the Hayeses to attorney fees. Once the Hayeses defaulted, and the Palmers elected their remedy of liquidated damages, the Agreement was terminated.

■ Second, the Hayeses contend that they are entitled to attorney fees under Utah Code Ann. § 78–27–56.5 (1992). Section 78–27–56.5 provides in part, that "[a] court may award costs and attorney's fees to either party that prevails in a civil action based upon ... [a] written contract." We do not address the Hayeses' claim under the statute because they did not present that argument to the trial court. *See Southwick v. Leone*, 860 P.2d 973, 978 n. 2 (Utah App.1993). We therefore affirm the trial court's denial of the Hayeses' request for attorney fees.

## CONCLUSION

The trial court did not err by ruling that the Palmers had to tender release of the earnest money deposit before pursuing other remedies. We therefore affirm the trial court's grant of summary judgment in favor of the Hayeses. We also affirm the trial court's decision to deny the Hayeses an award of attorney fees.

GARFF and JACKSON, JJ., concur.