**2022 UT 44**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ROCKY MOUNTAIN HOSPITALITY, LLC,
*Appellant,*

*v.*

MOUNTAIN CLASSIC REAL ESTATE, INC.,
*Appellee.*

No. 20210798
Heard September 12, 2022
Filed December 22, 2022

On Direct Appeal

Third District, Salt Lake City
The Honorable Su Chon
No. 210902706

Attorneys:

Rod N. Andreason, Zachary C. Lindley, Lehi, for appellant

Jeremy M. Hoffman, Scott L. Sackett II, Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUSTICE HAGEN,
and JUSTICE POHLMAN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Mountain Classic Real Estate, Inc. (Buyer) entered into a contract with Rocky Mountain Hospitality, LLC (Seller) to purchase a Super 8 motel for $3.4 million. The purchase price included a $30,000 earnest money deposit, which Buyer deposited with a title company to be held in escrow. The contract contains a default provision stating that if Buyer failed to complete the purchase, Seller could choose to retain the deposit as liquidated damages or "return it and sue" Buyer for other remedies.

¶2 Buyer failed to purchase the motel, and Seller eventually sold it to another buyer for significantly less money. Seller then filed this lawsuit seeking damages exceeding $780,000, but Seller failed to release its interest in the earnest money deposit before filing the complaint. Buyer moved to dismiss, arguing that under the contract's default provision, Seller had elected to retain the deposit as liquidated damages by failing to return the deposit before filing suit. In making its argument, Buyer relied on the court of appeals' decision in *McKeon v. Crump*,[1] which interpreted an identical default provision to require dismissal if a seller retained an earnest money deposit at the time it filed a complaint.[2] Shortly after receiving the motion to dismiss, Seller instructed the title company to release the deposit back to Buyer, but Buyer refused to accept the funds.

¶3 The district court agreed with Buyer and dismissed the complaint. Seller now appeals, arguing the default clause's language stating Seller can elect to "return [the deposit] and sue" does not require that the deposit be returned *before* the filing of a complaint, only that both happen within a reasonable time. It also claims that *McKeon*'s language stating otherwise is either dicta or out-of-line with caselaw from this court interpreting similar default provisions. And Seller argues that even if we agree with the *McKeon* rule, under the equitable doctrines of substantial compliance, form over substance, and lack of prejudice, Seller's complaint should not be dismissed.

¶4 We reject Seller's arguments and affirm. Our caselaw establishes that the default clause obligates a seller to release its interest in an earnest money deposit before filing a complaint if the seller wishes to pursue a remedy other than liquidated damages. Because Seller failed to release its interest in the deposit before filing its complaint, it is barred from pursuing other remedies. And Seller has not convinced us that any of the equitable doctrines it cites apply to this case.

---

[1] 2002 UT App 258, 53 P.3d 494.

[2] *Id.* at 496–98.

## Background

¶5   Seller owned a sixty-five-room Super 8 motel located in Midvale, Utah.[3] Buyer expressed interest in buying the motel, and the parties eventually executed a contract for Buyer to purchase the motel for $3.4 million. As part of the purchase price, Buyer paid a $30,000 earnest money deposit, which a title company held in escrow. The contract contains a default clause stating that "[i]f Buyer defaults, Seller may elect either to retain the Earnest Money Deposit as liquidated damages, or to return it and sue Buyer to specifically enforce this Contract or pursue other remedies available at law."

¶6   Buyer struggled to close the purchase on time. And even though Seller extended the closing date twice, Buyer ultimately failed to purchase the property. Seller eventually sold the motel to another buyer for $2.75 million—$650,000 less than what Buyer had agreed to pay.

¶7   Seller then sued Buyer, bringing claims for breach of contract and breach of the implied covenant of good faith and fair dealing, seeking damages of just over $780,000. When Seller filed the complaint, it had not returned the earnest money deposit to Buyer or instructed the title company to do so.

¶8   Buyer moved to dismiss, arguing that because Seller had not released its interest in the deposit before filing the complaint, it had elected under the default clause to keep the deposit as liquidated damages and could not pursue other remedies. In support of its argument, Buyer cited *McKeon v. Crump*, in which the court of appeals held that an identical default clause required a seller to release an earnest money deposit *before* the seller could pursue a claim for damages.[4] To prove that Seller had not attempted to return the deposit before filing suit, Buyer submitted a declaration from one of the title company's employees.

¶9   Eleven days after receiving Buyer's motion to dismiss, Seller informed the title company that it was releasing its interest in the

---

[3] The facts are either taken from Seller's complaint or are undisputed. *See Sur. Underwriters v. E & C Trucking, Inc.*, 2000 UT 71, ¶ 15, 10 P.3d 338 ("In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.").

[4] 2002 UT App 258, ¶¶ 6, 17, 53 P.3d 494.

deposit and instructed the company to return the funds to Buyer. The title company attempted to release the funds, but Buyer refused to accept them.

¶10  After attempting to release the deposit to Buyer, Seller filed an opposition to the motion to dismiss and conceded that it did not return the deposit before filing suit. But Seller attempted to distinguish its situation from *McKeon* and relied on the fact that it had tried to return the deposit shortly after filing. Seller also argued, in the alternative, that if *McKeon* applied, its complaint should not be dismissed because (1) it substantially complied with its obligations under the default clause, (2) dismissal of the complaint would improperly elevate form over substance, and (3) Buyer was not prejudiced by its failure to return the deposit before filing suit. To support its assertion that it had attempted to release the funds to Buyer, Seller attached a declaration from one of its managing members to its opposition.

¶11  The district court granted Buyer's motion to dismiss, stating that Seller had failed to return the deposit before filing the lawsuit and had attempted to return the deposit only after filing. It then rejected Seller's equitable arguments and held that, under *McKeon*, Seller had elected to retain the deposit as liquidated damages and could not pursue other remedies. It accordingly dismissed Seller's complaint with prejudice.

¶12 Seller appeals. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## Standard of Review

¶13  In dismissing Seller's complaint, the district court purported to grant a motion to dismiss under rule 12(b)(6) of the Utah Rule of Civil Procedure. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and interpret those facts and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff as the nonmoving party."[5] But the court relied on facts outside the complaint in its ruling—specifically, that Seller failed to release its interest in the deposit before filing its complaint and that it attempted to return the deposit shortly afterward. If, when considering a motion to dismiss under rule

---

[5] *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 3, 108 P.3d 741 (citation omitted).

12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties must be given reasonable opportunity to present all material made pertinent to such a motion."[6] Both Seller and Buyer attached declarations to their filings to establish the facts surrounding Seller's handling of the deposit, and the district court relied on these facts in its ruling. Because the district court relied on facts outside the complaint, it should have converted the motion to dismiss into a motion for summary judgment.

¶14 It is typically "reversible error" for a district court to consider facts outside the complaint without giving all parties a reasonable opportunity to present all pertinent material, and we will generally not affirm "unless the dismissal can be justified without considering the outside documents."[7] But we have made an exception when both parties submit evidence with their filings because, in that case, neither party is prejudiced by the district court's implicit conversion of the motion to dismiss into a motion for summary judgment.[8] "Because from the outset the parties have submitted extraneous materials and treated the motion to dismiss as a motion for summary judgment, neither party was prejudiced or unfairly surprised by the trial court's implicit conversion of [Buyer's]

---

[6] UTAH R. CIV. P. 12(b).

[7] *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226 (citation omitted).

[8] *See, e.g.*, *Swenson v. Erickson*, 2000 UT 16, ¶ 9, 998 P.2d 807 (stating that because "the parties ha[d] submitted extraneous materials and treated the motion to dismiss as a motion for summary judgment, neither party was prejudiced" by the district court's implicit conversion of the motion to dismiss to a motion for summary judgment (citations omitted)); *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 838 n.3 (Utah 1996) (treating a grant of a motion to dismiss as a motion for summary judgment when "all parties submitted extraneous materials and neither plaintiffs nor defendants [were] prejudiced" by the implicit conversion); *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 256 n.2 (Utah 1994) (holding that because the 12(b)(6) motion's "supporting memorandum contained material outside the pleadings," "the district court's order [was] properly viewed as involving summary judgment").

12(b)(6) motion into a motion for summary judgment."[9] We will accordingly review the district court's ruling under the summary judgment standard.

¶15 "We review a district court's grant of summary judgment for correctness. We affirm a grant of summary judgment when the record shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10]

**Analysis**

¶16 Seller makes two general arguments on appeal. First, it challenges the court of appeals' caselaw the district court relied on in dismissing the complaint—caselaw that obligated Seller to release its interest in the deposit before filing suit. And second, Seller argues that even if it was obligated to release its interest in the deposit before filing suit, several equitable doctrines excuse its failure to strictly comply with its contractual obligations.

¶17 We reject Seller's arguments and affirm. Under both a plain language approach to interpreting the contract and Utah caselaw, the default clause obligated Seller to release its interest in the deposit before it could file its complaint seeking general damages. Because Seller retained its interest in the deposit when it filed suit, it is deemed to have elected to retain the deposit as liquidated damages. Its claims for general damages are accordingly barred, and the district court correctly dismissed the complaint. Further, we reject Seller's equitable arguments because none of the equitable doctrines it relies on apply to this case.

I. Seller's Claims Are Barred

*A. The Plain Language of the Contract Prohibits the Simultaneous Election of Both Remedies*

¶18 When interpreting a contract, "we first look at the plain language [of the contract] to determine the parties' meaning and intent."[11] But "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from

---

[9] *See Swenson*, 2000 UT 16, ¶ 9 (citations omitted).

[10] *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256 (citation omitted) (internal quotation marks omitted).

[11] *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 (alteration in original) (citation omitted) (internal quotation marks omitted).

the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[12] Adopting the plain language approach, we hold that the contract between the parties proscribes Seller from suing Buyer.

¶19 The default provision of the contract includes an election clause that states: "If Buyer defaults, Seller may elect to retain the Earnest Money Deposit as liquidated damages, *or* to return it and sue Buyer to specifically enforce this Contract or pursue other remedies available at law."[13] In other words, the contract dictates that if Buyer defaults, Seller may elect one remedy or the other, not both.[14] For thirty-six days after filing its complaint, Seller maintained constructive control of the deposit.[15] Regardless of its intent, by retaining the deposit while proceeding through the early stages of litigation, Seller effectively attempted to elect both remedies simultaneously, which is prohibited by the plain language of the contract.

¶20 The election clause of the contract requires that Seller make an election. "It is a basic principle of contract law that parties are generally 'free to contract according to their desires in whatever

---

[12] *Id.* (citation omitted) (internal quotation marks omitted).

[13] (Emphasis added.)

[14] *See Warburton v. Va. Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 782 (Utah Ct. App. 1995) ("In interpreting contracts, 'the ordinary and usual meaning of the words used is given effect.'" (citation omitted)).

[15] Regardless of whether Seller held the money personally or in escrow, the result is the same. *See, e.g., Palmer v. Hayes*, 892 P.2d 1059, 1062 (Utah Ct. App. 1995) ("Regardless of Maple Hills Realty's duties as escrow agent, the Palmers had an affirmative duty to release their interest in the deposit money to the Hayeses before they filed their suit for damages."); *Mountain Courtyard Suites v. Wysong*, 452 F. Supp. 3d 1275, 1281–82 (D. Utah 2020) ("*Palmer* thus makes clear that MCS's failure to release the earnest money before filing suit bars its suit to the extent it seeks 'general damages' or any remedy other than the earnest money, even though the earnest money is held by an escrow agent and MCS cannot unilaterally retain it as liquidated damages.").

terms they can agree upon.'"[16] Seller could have negotiated a different or more favorable default provision, but it did not. Thus, by retaining the deposit, Seller chose to relinquish the opportunity to seek other remedies—even if Seller did so inadvertently. Seller is, therefore, barred from suing Buyer. While this may be an unfortunate conclusion for Seller, it is mandated by the terms of the contract and reinforced by Utah caselaw.

*B. Utah Caselaw Supports Our Interpretation of the Contract's Default Provision*

¶21  In dismissing Seller's claims, the district court relied on the court of appeals' decision in *McKeon v. Crump*, a case that examined a default clause identical to the one at issue here.[17] In *McKeon*, the court of appeals determined that "Utah case law establishes that to pursue specific performance or damages under the . . . default clause, sellers must return the earnest money deposit before filing suit."[18] In doing so, the court of appeals looked to one of its earlier cases, *Palmer v. Hayes*,[19] in which the court analyzed four of our cases —*Andreasen v. Hansen*,[20] *Dowding v. Land Funding Ltd.*,[21] *Close v. Blumenthal*,[22] and *McMullin v. Shimmin*,[23]—and determined that those cases "uniformly hold that before a seller may pursue a remedy other than liquidated damages, the seller must release any claim to the deposit money."[24] The court of appeals also held that the sellers "had an affirmative duty to release their interest in the deposit money . . . before they filed their suit for damages."[25]

---

[16] *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 35, 367 P.3d 994 (citation omitted).

[17] 2002 UT App 258, ¶ 6, 53 P.3d 494.

[18] *Id.* ¶ 17.

[19] 892 P.2d 1059.

[20] 335 P.2d 404 (Utah 1959).

[21] 555 P.2d 957 (Utah 1976).

[22] 354 P.2d 856 (Utah 1960).

[23] 349 P.2d 720 (Utah 1960).

[24] *Palmer*, 892 P.2d at 1062 (citations omitted).

[25] *Id.*

¶22 Seller challenges *McKeon* and *Palmer*, arguing that those cases misconstrued our earlier caselaw. It claims that our caselaw never established that sellers must return the earnest money deposit before filing suit and that the court of appeals engaged in "decisional creep" by concluding otherwise. Seller then argues that the default clause's language that the seller can "return [the deposit] and sue" is conjunctive, not sequential, and that returning the deposit does not necessarily need to happen before filing suit.[26]

¶23 We reject Seller's arguments because *McKeon* and *Palmer* properly interpreted our caselaw to mandate that sellers must return an earnest money deposit *before* filing suit if the seller wishes to pursue a remedy other than liquidated damages. "*Stare decisis* is a cornerstone of Anglo-American jurisprudence that is crucial to the predictability of the law and the fairness of adjudication."[27] "It requires us to extend a precedent to the conclusion mandated by its rationale."[28] "With these principles in mind, our respect for precedent means we value and implement the *text* of our past opinions as far as it can logically go."[29]

¶24 The first case where we interpreted a default provision in a real estate contract was *Andreasen v. Hansen*.[30] In that case, the buyers entered into an agreement to purchase a duplex from the sellers and paid a $50 earnest money deposit.[31] The contract contained a clause stating that "[i]n the event the purchaser fails to pay the balance of the said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, *at the option of the seller*, be

---

[26] Buyer claims that Seller's argument that the phrase "return it and sue" is conjunctive rather than sequential, is unpreserved because Seller never raised the argument below. But Buyer is incorrect. Seller made its "conjunctive, not sequential" argument in both its opposition to the motion to dismiss and at a hearing before the district court. So Seller's arguments are preserved.

[27] *Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 57, 416 P.3d 663 (citation omitted) (internal quotation marks omitted).

[28] *Pleasant Grove City v. Terry*, 2020 UT 69, ¶ 41, 478 P.3d 1026 (citation omitted) (internal quotation marks omitted).

[29] *Id.* ¶ 42.

[30] 335 P.2d 404.

[31] *Id.* at 405.

retained as liquidated and agreed damages."[32] When the buyers failed to complete the purchase, the sellers sued for damages and eventually obtained a judgment.[33] But the sellers never returned the $50 deposit.[34] The buyers appealed, and we reversed, holding that because the seller retained the $50 deposit, it had exercised the option to keep the deposit as liquidated damages.[35] We reasoned that "[t]he fact that the money was kept is incontrovertible evidence that the [sellers] exercised the option to keep it. That being so, they must be deemed to have kept it for the purpose indicated in the contract, that is, as liquidated damages."[36]

¶25 We faced a similar factual scenario in *McMullin v. Shimmin*.[37] In that case, the buyers entered into an agreement with the seller to purchase property, and the buyers paid a $100 earnest money deposit.[38] The purchase agreement contained a default clause identical to the one at issue in *Andreasen*.[39] The seller sued the buyers for breaching the agreement, seeking specific performance or, in the alternative, damages.[40] The seller had never returned or offered to return the $100 deposit.[41] The district court dismissed the seller's complaint at a pre-trial conference, and the seller appealed, with the principal issue being whether *Andreasen* was controlling.[42] The seller argued that *Andreasen* was distinguishable because, in his case, he sued not only for damages but also for specific performance.[43] We held that because the seller had sold the property to a different buyer, he no longer had a claim for specific performance, and we

---

[32] *Id.* at 406 (internal quotation marks omitted).

[33] *Id.* at 405.

[34] *Id.* at 408.

[35] *Id.*

[36] *Id.*

[37] 349 P.2d 720.

[38] *Id.* at 720–21.

[39] *Id.* at 721; *see Andreasen*, 335 P.2d at 406.

[40] *McMullin*, 349 P.2d at 721.

[41] *Id.*

[42] *Id.*

[43] *Id.*

determined that *Andreasen* was controlling on the issue of damages.[44] We stated:

> The only question as to whether [the liquidated damages] limit applies is whether or not the option has been exercised. Such option is exercised by retention of the down payment. The clause tells the parties that the seller need only to retain the sum to exercise his right to keep it. . . . His retention becomes meaningful when he claims the buyer has breached the contract and refuses to go through with it.[45]

We then held that because "it [was] obvious that the seller claimed a breach," the seller had exercised the liquidated damages option because he had kept the deposit.[46]

¶26 In *Close v. Blumenthal*,[47] decided a few months after *McMullin*, the buyers entered into an agreement with the seller to purchase a home.[48] The buyers paid a $500 earnest money deposit, and the agreement contained the same default clause.[49] After the buyers failed to go through with the purchase, the seller sued for specific performance, but he "did not return, nor offer to return, the $500 before commencing th[e] action."[50] The seller obtained a judgment for specific performance, and the buyers appealed.[51] We reversed, holding that the *Andreasen* rule applied regardless of whether the buyer was seeking damages or specific performance.[52] We decided that because the option clause was "for the benefit of the seller," it "should be strictly applied against the seller[,] and he should be held to meet its requirements with exactness."[53] We also

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] 354 P.2d 856.

[48] *Id.* at 856.

[49] *Id.* at 856–57.

[50] *Id.* at 857.

[51] *Id.* at 856.

[52] *Id.* at 857.

[53] *Id.*

determined that the seller could not retain the deposit and also pursue other remedies, stating that

> [T]o permit the seller to retain the money and also to sue for specific performance would in effect render the option clause meaningless by not requiring him to exercise his option. It seems only fair and reasonable that where the contract provides that the seller may 'at his option' retain the earnest money payment as liquidated damages, in lieu of enforcing the contract, he should be required to make his choice to do one or the other, and to act consistently therewith. That he has his choice is enough without giving him the advantage of both alternatives and thus providing two strings to his bow. The [seller] having kept the $500 must be deemed to have kept it for the purpose indicated in the contract, this is, as liquidated damages and is precluded from the other remedy.[54]

¶27  Lastly, in *Dowding v. Land Funding Ltd.*, as in the other cases, a buyer signed a purchase agreement containing the same option clause and paid a $200 deposit.[55] The buyer failed to complete the purchase, and the seller sued for damages.[56] The seller did not return or offer to return the deposit before filing suit, but the seller deposited the $200 with the clerk of the court.[57] The district court granted the buyer's motion to dismiss, and the seller appealed.[58] Holding that the *Andreasen* line of cases was dispositive, we affirmed the dismissal, stating that the "damages obviously appear to be $200 as agreed."[59]

¶28 Seller is correct when it states that none of these cases explicitly hold that a seller must return an earnest money deposit before filing a complaint to pursue remedies other than liquidated damages. But we think the cases clearly establish four legal rules

---

[54] *Id.*

[55] 555 P.2d 957, 957.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

that, when extended to "the conclusion mandated by [their] rationale,"[60] require a seller to release its interest in the deposit before filing suit. First, default clauses like the one at issue require the seller to choose between keeping the deposit or pursuing other remedies; the seller cannot have it both ways.[61] Second, a seller exercises the liquidated damages option by retaining the deposit; no affirmative action is needed, and the act of retaining the deposit is dispositive.[62] Third, a seller cannot retain the deposit and simultaneously pursue other remedies.[63] And fourth, a seller exercises the option of liquidated damages by retaining the deposit at the time the seller claims a breach.[64]

¶29 Based on these rules, we determine that the court of appeals came to the correct conclusion in *Palmer* and *McKeon*. While it is true

---

[60] *Terry*, 2020 UT 69, ¶ 41 (citation omitted) (internal quotation marks omitted).

[61] *See Close*, 354 P.2d at 857 ("It seems only fair and reasonable that where the contract provides that the seller may 'at his option' retain the earnest money payment as liquidated damages, in lieu of enforcing the contract, he should be required to make his choice to do one or the other, and to act consistently therewith.").

[62] *See Andreasen*, 335 P.2d at 408 ("The fact that the money was kept is incontrovertible evidence that the plaintiffs exercised the option to keep it. That being so, they must be deemed to have kept it for the purpose indicated in the contract, that is, as liquidated damages."); *McMullin*, 349 P.2d at 721 ("The only question as to whether such limit applies is whether or not the option has been exercised. Such option is exercised by retention of the down payment.").

[63] *See Close*, 354 P.2d at 857 ("It is further to be observed that to permit the seller to retain the money and also to sue for specific performance would in effect render the option clause meaningless by not requiring him to exercise his option."); *id.* ("[The seller] should be required to make his choice to do one or the other, and to act consistently therewith. That he has his choice is enough without giving him the advantage of both alternatives and thus providing two strings to his bow.").

[64] *See McMullin*, 349 P.2d at 721 ("[The seller's] retention [of the deposit] becomes meaningful when he claims the buyer has breached the contract and refuses to go through with it.").

that in those cases the court of appeals did not address the difference between intentionally retaining the earnest money deposit and inadvertently delaying its return, we agree with the court's central holding that a seller must return the earnest money deposit before filing suit if the seller wishes to pursue a remedy other than liquidated damages.

¶30 Our caselaw is consistent with this approach.[65] Under similar circumstances, we have held that retaining a deposit and suing for damages "are mutually exclusive" remedies[66]—indicating that a seller's retention of an earnest money deposit "becomes meaningful" after the buyer breaches the contract and the seller files suit.[67] This interpretation is reinforced by decades-old court of appeals caselaw construing default clauses effectively identical to the one at issue here.[68] More than twenty-five years ago, the court of appeals stated that "before a seller may pursue a remedy other than liquidated damages, the seller must release any claim to the deposit money."[69] And less than a decade later, it reiterated that "sellers must return the earnest money deposit before filing suit."[70] Thus, it is clear that where the plain language of the contract explicitly requires a seller to elect an option—as it does in the case before us— the seller may not retain the deposit and also sue for damages.

---

[65] *See Close*, 354 P.2d at 857 ("[T]o permit the seller to retain the money and also to sue for specific performance would in effect render the option clause meaningless by not requiring him to exercise his option.").

[66] *McMullin*, 349 P.2d at 721.

[67] *Id.* We also find it instructive that in all our cases, we determined that the seller was prohibited from pursuing other remedies after retaining the deposit regardless of the procedural posture of the case. *See Andreasen*, 335 P.2d at 409 (reversing the seller's judgment for damages); *Dowding*, 555 P.2d at 957 (affirming the grant of a motion to dismiss); *Close*, 354 P.2d at 857 (reversing a judgment of specific performance); *McMullin*, 349 P.2d at 721 (affirming a dismissal entered after a pre-trial conference).

[68] *See, e.g.*, *Palmer*, 892 P.2d 1059, 1061; *McKeon*, 2002 UT App 258, ¶ 6.

[69] *Palmer*, 892 P.2d at 1062 (citations omitted).

[70] *McKeon*, 2002 UT App 258, ¶ 17.

¶31 Based on our caselaw and established legal principles, we hold that Seller is barred from pursuing its claims seeking general damages because it had not released its interest in the deposit before filing its complaint. Though this decision may be a harsh result for Seller,[71] there are advantages to having a clear-cut, return-before-filing rule. It produces uniformity and predictability because the timing of a seller's election of liquidated damages is clear in every case. A contrary rule would inject uncertainty into the litigation process. As Seller concedes in its briefs, there must be some kind of "temporal proximity" between releasing the escrow deposit and filing suit. But at what point would the "temporal proximity" between filing and returning the deposit be great enough to conclude that a seller has elected liquidated damages? Once discovery is finished? When a party moves for summary judgment? Once a trial begins? Or would the "temporal proximity" need to be determined on a case-by-case basis? We conclude that the default clause, the caselaw, and sound policy dictate that a seller must return the deposit before filing suit if the seller wishes to pursue a remedy other than liquidated damages.[72]

---

[71] Seller states that it sold the motel for $650,000 less than it would have if Buyer had purchased the motel as agreed. Evidence on the record suggests that this loss was primarily a result of the unforeseen and rapid change in the market, which suffered significantly because of the COVID-19 pandemic.

[72] Seller also argues that allowing it to pursue its claims—even though it did not return the deposit before filing suit—is in line with our election of remedies doctrine as stated in *Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, 361 P.3d 63. We reject this argument. It is true that in *Helf*, we stated that "[w]here a plaintiff must choose between alternative remedies for a single theory of liability, an election is not final until a judgment is fully satisfied." *Id.* ¶ 71 (citation omitted). This statement, on its own, would support Seller's argument. But in *Helf*, we also determined that the general rule applies "unless another doctrine . . . dictates that a plaintiff's election among inconsistent remedies is final at an earlier stage of the litigation." *Id.* ¶ 77. As we explained above, our caselaw dictates that a seller's election of remedies occurs at an earlier stage of the litigation—i.e., at the time a complaint is filed. The general election of remedies rule accordingly does not apply.

## II. Seller's Equitable Arguments Fail

¶32 Seller argues that even if the default clause required it to release its interest in the deposit before filing suit, its failure to do so is excused for three reasons. First, Seller argues that its failure to release the deposit before filing the complaint should be excused under the doctrine of substantial compliance. Second, it argues that dismissing its lawsuit for what it deems a "trivial delay" would improperly elevate form over substance. And last, Seller argues that because Buyer did not suffer prejudice from its delayed attempt to release the deposit, Seller's complaint should not be dismissed.

¶33 We reject these arguments and affirm the district court's dismissal. The doctrine of substantial compliance does not apply in this case, because our caselaw establishes that sellers must strictly comply with the default clause, and the case Seller relies on for its substantial compliance argument is inapplicable. Seller's "form over substance" and "lack of prejudice" arguments are also unpersuasive. We therefore affirm the dismissal.

¶34 To support its substantial compliance argument, Seller cites *U-Beva Mines v. Toledo Mining Co.*,[73] but that case is inapplicable. In *U-Beva Mines*, U-Beva sought to cancel its mining lease with Toledo because Toledo was late in making an $87 tax payment.[74] We determined that even if Toledo had paid the taxes late, the doctrine of substantial compliance applied because "the defection was so minor as to invoke the offices of equity, and that at law substantial compliance with the contract, under the circumstances, would purge an erstwhile default under a generally accepted policy against forfeiture . . . ."[75] This case is inapt. The doctrine of substantial compliance holds special prominence in lease cases because the law disfavors lease forfeitures.[76] Seller has made no argument for why a

---

[73] 471 P.2d 867 (Utah 1970).

[74] *Id.* at 867–68.

[75] *Id.* at 869.

[76] *See id.* (applying substantial compliance to a lease because of "a generally accepted policy against forfeiture"); *Hous. Auth. of Salt Lake City v. Delgado*, 914 P.2d 1163, 1165 (Utah Ct. App. 1996) ("We observe a general policy disfavoring forfeitures. The substantial compliance doctrine furthers that policy by allowing equity to intervene and rescue a lessee from forfeiture of a lease when the

(continued . . .)

case applying substantial compliance to a lease agreement applies to a case involving a real estate purchase contract. So we reject Seller's substantial compliance argument.

¶35  In addition, we have held that default clauses like the one in this case "should be strictly applied against the seller[,] and [the seller] should be held to meet its requirements with exactness."[77] At the risk of stating the obvious, substantial compliance does not apply to a default clause that must be "strictly applied" against Seller and demands that it "meet [the clause's] requirements with exactness."[78]

¶36 We also reject Seller's arguments that dismissing its complaint would improperly exalt "form over substance" and that we should not dismiss its complaint because Buyer was not prejudiced by its delayed release of the deposit. For the "form over substance" argument, Seller has failed to convince us that the doctrine applies here. The two cases it cites in support of its argument deal with miscaptioned litigation documents—not failure to fulfill contractual obligations.[79] Regarding prejudice, Seller provides no argument for how prejudice is legally relevant to its obligations under the default clause. The contract says nothing about prejudice or harm to Buyer. And the two cases Seller cites do not change the outcome, because those cases dealt with inapplicable legal doctrines—laches[80] and estoppel[81]—both of which require a

---

lessee has substantially complied with the lease in good faith." (citing *U-Beva Mines*, 471 P.2d at 869)).

[77] *Close v. Blumenthal*, 354 P.2d 856, 857 (Utah 1960).

[78] *Id.*

[79] *See Miller v. USAA Cas. Ins.*, 2002 UT 6, ¶ 28, 44 P.3d 663 (holding that a "motion for conference" was "tantamount to an appeal" and refusing to "elevate and exalt form over substance" in treating the motion otherwise); *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 n.4 (Utah 1996) (holding that it would "elevate form over substance" if a court dismissed a request to set aside an arbitration award because the request was contained in a verified complaint rather than a motion, as required by statute).

[80] *Anderson v. Doms*, 1999 UT App 207, 984 P.2d 392 (considering whether the doctrine of laches barred the plaintiff's claim).

[81] *Barnes v. Wood*, 750 P.2d 1226 (Utah Ct. App. 1988) (considering whether estoppel barred a plaintiff's claims).

showing of prejudice.[82] These cases are accordingly off-base, and Seller has failed to convince us that prejudice is relevant here.

### III. Buyer Is Entitled to Attorney Fees on Appeal

¶37 Buyer requests its attorney fees on appeal. The parties' contract states that "in the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees." Because Buyer has achieved its goal of obtaining a dismissal of all Seller's claims, it is clearly the prevailing party. We accordingly grant Buyer its reasonable attorney fees and costs incurred up and through this appeal and remand to the district court to determine the amount of fees.

### Conclusion

¶38 Under the default clause and our caselaw, Seller was required to release its interest in the earnest money deposit before filing suit if it wished to pursue a remedy other than liquidated damages. Because Seller retained the deposit at the time it filed its complaint, it is deemed to have elected to retain the deposit as liquidated damages and is barred from pursuing its claims. Further, Seller has not established that its failure to return the deposit before filing suit should be excused under equitable principles. We affirm, award Buyer its attorney fees, and remand to the district court to determine the amount of fees.

---

[82] *See Fundamentalist Church of Jesus Christ of Latter-day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502 (stating that laches requires an "injury to defendant" from plaintiff's lack of diligence in bringing a timely claim (citation omitted) (internal quotation marks omitted)); *Blackhurst v. Transamerica Ins.*, 699 P.2d 688, 691 (Utah 1985) (stating that estoppel requires that a party experience "detriment or damage if the first party is permitted to repudiate his conduct" (citation omitted) (internal quotation marks omitted)).